Edwin F. McPherson – State Bar No. 106084
emcpherson@mcpherson-llp.com
Gabriel Henriquez – State Bar No. 289007
ghenriquez@mcpherson-llp.com
**McPHERSON LLP**
1900 Avenue of the Stars
25th Floor
Los Angeles, CA  90067
Tel:(310)553-8833
Fax:(310)553-9233

Attorneys for Respondent SPRINGTIME PUBLISHING, INC.

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMAZING GRACE MOVIE, LLC, a California limited liability company;<br><br>                    Petitioner,<br><br>          vs.<br><br>SPRINGTIME PUBLISHING, INC., a Michigan corporation,<br><br>                    Respondent. | CASE NO. 2:26-cv-04433<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION UNDER 28 U.S.C. §1441(b)**<br><br>**(DIVERSITY)** |

TO THE CLERK OF THE CAPTIONED COURT:

PLEASE TAKE NOTICE that Respondent SPRINGTIME PUBLISHING, INC. (hereinafter "Respondent"), hereby removes to this Court the state court action described below.

1.      On April 3, 2026, an action was commenced in the Superior Court of the State of California, for the County of Los Angeles, entitled <u>Amazing Grace Movie, LLC v. Springtime Publishing, Inc.</u>, L.A.S.C. Case No. 26STCP01358.  A copy of the Petition, and all of the pleadings filed in the State Court Action that were received by Respondent, are attached hereto as Exhibit "A."

///

2.     The first date upon which Respondent received a copy of said Petition was on or about April 10, 2026, when the agent for service of process for Respondent received a copy of the Petition.

3.     This action is a civil action, of which this Court has original jurisdiction under 28 U.S.C. Section 1332, and is one that may be removed to this Court by defendants pursuant to 28 U.S.C. Section 1441(b) because there is complete diversity of citizenship between the named parties, who are citizens of the United States, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00. Specifically:

(a)     Petitioner alleges that it is a California limited liability company with its headquarters and principal place of business in Los Angeles County, California. Petition, at 3.  Thus, it is a citizen of California.

(b)     Petitioner alleges that Respondent is a corporation, incorporated in the State of Michigan.  Id.  Thus, it is a citizen of Michigan.

(c)     Petitioner alleges that it has sustained "significant damages."  Petition, at 7.

Dated: April 27, 2026

Edwin F. McPherson
Gabriel Henriquez
**McPHERSON LLP**

By: _____/s/ Edwin F. McPherson_____
EDWIN F. McPHERSON
Attorneys for Respondent
SPRINGTIME PUBLISHING, INC.

# EXHIBIT "A"

Electronically FILED by
Superior Court of California,
County of Los Angeles
4/03/2026 1:09 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By D. Williams, Deputy Clerk

MAURICE D. PESSAH (SBN: 275955)
*maurice@pessahgroup.com*
ELI MELAMED (SBN: 301790)
*emelamed@pessahgroup.com*
JOSHUA RUBINTON (SBN: 362785)
*jrubinton@pessahgroup.com*
**PESSAH LAW GROUP, PC**
9100 Wilshire Blvd., Ste. 850E
Beverly Hills, CA 90212
Tel: (310) 772-2261

Attorneys for Petitioner
AMAZING GRACE MOVIE, LLC

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF LOS ANGELES**

| | |
|---|---|
| AMAZING GRACE MOVIE, LLC, a California limited liability company<br><br>Petitioner,<br><br>v.<br><br>SPRINGTIME PUBLISHING, INC., a Michigan corporation,<br><br>Respondent. | Case No.: 26STCP01358<br><br>**PETITION TO COMPEL SPRINGTIME PUBLISHING, INC. TO ARBITRATION**<br><br>*[Filed concurrently with Request for Judicial Notice, [proposed] Order, and Declaration of Maurice Pessah]* |

1

PETITION TO COMPEL ARBITRATION

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................ 1

II. PARTIES, JURISDICTION AND VENUE ......................................................... 3

III. FACTUAL ALLEGATIONS................................................................................ 4

    A. Petitioner's Agreement with the Estate and The Instant Dispute ..................... 4

    B. The Estate's Representation and Warranties.................................................... 5

    C. The Estate's Bad Faith Conduct ..................................................................... 5

    D. Arbitration and Interim Award........................................................................7

IV. LEGAL STANDARD........................................................................................ 11

V. ARGUMENT ..................................................................................................... 12

    A. Springtime Is Bound by the Express Terms of the Agreement Requiring It to Participate in Arbitration .................................................................................. 12

    B. Springtime Is Bound by the Arbitration Clause Under the Preexisting-Relationship and Equitable-Estoppel Doctrines.................................................. 13

        1. The Preexisting-Relationship and Equitable-Estoppel Doctrines .............. ...13

    C. SPRINGTIME IS BOUND BY THE ARBITRATION CLAUSE AS AN AGENT OF THE ESTATE.................................................................................14

        1. The Agency Doctrine Exends Arbitration Obligations to Non-Signatory Agents...... 14

        2. The Record Establishes a Textbook Agency Relationship .......................... 15

    D. Springtime Is the Alter Ego of the Estate and Is Therefore Bound by the Estate's Arbitration Obligation..................................................................................16

        1. Unity of Interest and Ownership Is Complete........................................... 16

        2. Adherence to Corporate Separateness Would Promote an Inequitable Result .......17

    E. Joinder Is Independently Required Under Code of Civil Procedure § 1281.2(c).............18

VI. PRAYER FOR RELIEF ...................................................................................18

PETITION TO COMPEL ARBITRATION

# TABLE OF AUTHORITIES

**CASES**

*Acquire II, Ltd. v. Colton Real Estate Group*
213 Cal.App.4th 959, 967–68 (2013) _____ 12

*Benaroya v. Willis*
23 Cal. App. 5th 462, 489-9 (2018) _____ 11

*Boucher v. Alliance Title Co., Inc.*
127 Cal.App.4th 262, 268–69 (2005) _____ 11

*Cohen v. TNP 2008 Participating Notes Program* LLC
31 Cal.App.5th 840, 859-60 (2019) _____ 11

*DMS Services, LLC v. Superior Court*
205 Cal.App.4th 1346, 1352–53 (2012) _____ 13

*Garcia v. Pexco, LLC*
11 Cal.App.5th 782, 786–88 (2017) _____ 3

*Goldman v. KPMG LLP*
173 Cal.App.4th 209, 229–30 (2009) _____ 13

*JSM Tuscany, LLC v. Superior Court*
193 Cal.App.4th 1222, 1236–37 (2011) _____ 11

*Kendall v. Ernest Pestana*
40 Cal. 3d 488, 501 (1985)_____ 6

*Kustom Kraft Homes v. Leivenstein*
14 Cal. App. 3d 805, 810 (1971) _____ 11, 12

*Locke v. Warner Bros.*
57 Cal.App.4th 354, 363 (1997) _____ 6

*Malloy v. Fong*
37 Cal.2d 356, 370 (1951) _____ 15

*Mesler v. Bragg Management Co.*
39 Cal.3d 290, 300 (1985) _____ 12, 17

*Metalclad Corp. v. Ventana Environmental Organizational Partnership*
109 Cal.App.4th 1705, 1713 (2003) _____ 12, 13

*Mitchum, Jones & Templeton, Inc. v. Chronis*
72 Cal. App. 3d 596, 600 (1977)_____ 11, 12

ii

*Rowe v. Exline*
    153 Cal.App.4th 1276, 1284–90 (2007) _____ 2, 15

*Sonora Diamond Corp. v. Superior Court*
    83 Cal.App.4th 523, 538 (2000) _____ 12, 16, 17

*Suh v. Superior Court*
    181 Cal.App.4th 1504, 1513 (2010) _____ 11, 13

*Thomas v. Westlake*
    204 Cal.App.4th 605, 613–14 (2012) _____ 3,15

*Tutti Mangia Italian Grill, Inc. v. Am. Textile Maint. Co.*
    197 Cal.App. 4th 733, 739-40 (2011) _____ 11, 12

*UFCW & Emp'rs Benefit Tr. v. Sutter Health*
    241 Cal. App. 4th 909, 919 (2015) _____ 11

*VirtualMagic Asia, Inc. v. Fil-Cartoons, Inc.*
    99 Cal. App. 4th 228, 244 (2002) _____ 12, 17

***STATUTES***

Code of Civ. Proc., § 1281.2 _____ 1, 3, 11, 12, 13, 19

Code of Civ. Proc., § 1281.2(c) _____ 1, 3, 12,13,18,19

Code of Civ. Proc., § 1281.2(d) _____ 19

Code of Civ. Proc., § 1292_____ 3

Code of Civ. Proc., § 395_____ 4

Civ. Code, § 2295 _____ 15

PETITION TO COMPEL ARBITRATION

COMES NOW, AMAZING GRACE MOVIE, LLC ("AGM" or "Petitioner"), by and through the undersigned counsel, pursuant to Section 1281.2 of the California Code of Civil Procedure, and hereby respectfully petitions this Court for an order compelling the joinder of Springtime Publishing, Inc. ("Springtime") with that certain pending arbitration (JAMS Case No. 5345000713, the "Arbitration") involving Petitioner and The Estate of Aretha Franklin, acting through its duly appointed representative Andrew Mayoras, Esq. (the "Estate" or "Mayoras"). Petitioner seeks an order that:

1. Springtime be joined in the pending Arbitration because Springtime is bound to arbitrate under the subject agreement, and the doctrines of agency, alter ego and equitable estoppel, and because the claims against and concerning Springtime are inseparable from the arbitrable controversy;

2. Alternatively, if the Court concludes that Springtime is a "third party" within the meaning of Code of Civil Procedure section 1281.2(c), the Court order Springtime's intervention or joinder in a single proceeding, including joinder in the pending Arbitration as to all overlapping issues, to avoid conflicting rulings on common issues of law and fact; and

3. The Court grant such other relief as is just and proper.

## I. INTRODUCTION

AGM brings this petition to compel the joinder of Respondent Springtime to a California Arbitration currently pending between Petitioner and the estate of the late recording artist, Aretha Franklin. As conceded by the Estate (and confirmed by the evidence adduced in the Arbitration), Springtime is wholly owned and controlled by the Estate and acts exclusively at its behest. Indeed, Mayoras, the Estate's duly appointed representative, acts as Springtime's agent for service of process, President, Secretary, Treasurer and Director; he maintains identical roles for the Estate. After Petitioner successfully secured an emergency "interim award" against the Estate (the JAMS equivalent of a temporary restraining order), the Estate directed Springtime to interfere with Petitioner's contractual rights and economic opportunities. As a result, Petitioner amended its arbitration demand to include Springtime as a party. Because Springtime has indicated its intent to challenge the Arbitrator's jurisdiction, this petition is properly before the Court.

The Court should compel Springtime's joinder in the Arbitration because, despite being a non-signatory to the agreement underlying the Arbitration, (a) Springtime is nevertheless bound by the express terms of the agreement; (b) Springtime's conduct was material to the harm suffered by Petitioner, (c) Springtime is the wholly owned and controlled agent, instrument, and alter-ego of the Estate, and (d) Springtime's involvement in the Arbitration is necessary to fully adjudicate all overlapping claims without resulting in conflicting rulings on common issues of law and fact. Each ground independently supports granting the instant motion.

The Arbitration arises out of a written, March 21, 2019 agreement (the "Agreement") governed by California law. As already determined by the Arbitrator, the Agreement grants Petitioner an "all-inclusive" grant of rights to use and exploit both the audio and video portions of the recordings obtained of a live performance. (See, Declaration of Maurice Pessah ["Pessah Decl."], Exh. E [the "Interim Award"], ¶ 52) Petitioner was prompted to seek emergency relief in the Arbitration due to the Estate's commercially unreasonable refusal to consent to the exploitation of certain rights that AGM duly acquired after delivering significant consideration to the Estate; consent which is "not to be unreasonably withheld." In granting emergency relief, the Arbitrator, found that "[Petitioner] has met the burden of showing that it is likely to prevail on the claim that the [Estate] breached the 2019 Agreement and the covenant of good faith and fair dealing." (Pessah Decl., Exh. E, ¶ 75).

The arbitrable controversy heavily involves Springtime, which (as explained further herein) is bound by the express and unambiguous terms of the Agreement, as the agent of the Estate. The Estate has already confirmed it wholly owns and controls Springtime in papers and declarations filed in the Arbitration. Indeed, the Agreement itself expressly states the Estate has the "unilateral right and power" to cause Springtime to undertake certain acts. (Pessah Decl., Exh. A, Sec. 2(e)) However, the Estate continues to attempt to frame Springtime as an entirely separate, distinct and independent entity, despite clear and unambiguous evidence to the contrary.

Where, as here, the pleadings and evidence establish agency, alter ego, and intertwined claims arising from the same agreement and same transaction, the nonsignatory may be compelled to participate in arbitration. See, e.g., Rowe v. Exline, 153 Cal.App.4th 1276, 1284–1290 (2007);

PETITION TO COMPEL ARBITRATION

Thomas v. Westlake, 204 Cal.App.4th 605, 613–614 (2012); Garcia v. Pexco, LLC, 11 Cal.App.5th 782, 786–788 (2017).

Springtime is subject to an order compelling it to arbitrate pursuant to CCP § 1281.2, being that it is named as a party bound by the arbitration agreement. Moreover, even if the Court views Springtime as a "third party" within the meaning of CCP § 1281.2(c), the statute expressly authorizes the Court to order joinder or intervention of all parties in a single proceeding because the dispute arises out of the same series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact. If necessary, the Court should exercise that authority here to prevent conflicting rulings, preserve the efficacy of the Agreement, and ensure the full and proper adjudication of all claims.

## II. PARTIES, JURISDICTION AND VENUE

At all times herein mentioned, Petitioner was and is a California Limited Liability Company with its headquarters and principal place of business in Los Angeles County, California.

Springtime is a corporation incorporated in the State of Michigan, with its principal place of business there. Springtime is wholly owned and controlled by the Estate and regularly avails itself of the privileges and benefits of transacting business in the State of California.

This Court has jurisdiction over the parties due to the Agreement's express language binding Springtime, as an agent of the Estate, to the provisions of the Agreement. Jurisdiction is further established by Springtime's minimum contacts with the State of California and its regularly availing itself of the privileges and benefits of transacting business in the State of California, including by asserting licensing rights under the California-law-governed Agreement. Additionally, the Arbitration is currently being conducted in California, and the contract underlying the Arbitration is governed by California law. Furthermore, Springtime is the wholly owned and controlled alter ego of the Estate, which has already submitted to the jurisdiction of JAMS in the Arbitration.

Venue is proper in Los Angeles County pursuant to Code of Civil Procedure §§ 1292 and 1292.2, because the Arbitration is currently being conducted in Los Angeles County, California before an arbitrator in California and pursuant to an agreement governed by California law which

PETITION TO COMPEL ARBITRATION

states that "this Agreement shall be deemed for all purposes to have been made and entered into entirely in the State of California." Venue is also proper pursuant to Code of Civil Procedure § 395 because the underlying agreement was to be performed in Los Angeles County; the arbitration clause designates California law; and Petitioner's principal place of business and the locus of the commercial harm are situated in Los Angeles County.

### III. FACTUAL ALLEGATIONS

**A.    Petitioner's Agreement with the Estate and The Instant Dispute**

On March 21, 2019, Petitioner and the Estate entered into an agreement, whereby AGM acquired a comprehensive, exclusive, and all-inclusive grant of rights relating to certain audio and visual content recorded during a live concert (collectively, the "Concert Footage") from the Estate in exchange for a substantial payment, and other valuable consideration (the "Agreement"). (See, Pessah Decl., Exh. A) The Agreement entitled Petitioner to exploit the rights over the Concert Footage in various ways, subject to certain rights reserved to the Estate to approve of contemplated uses, as more particularly set forth in the Agreement.

Petitioner and the Estate agreed to arbitrate that California law would govern the Agreement and that all disputes arising under or related to the Agreement would be subject to arbitration. Specifically, Sections 9 and 10 of the Agreement respectively provide:

9. The Parties stipulate and agree that this Agreement shall be deemed for all purposes to have been made and entered into entirely in the State of California and shall be construed and interpreted in accordance with, and shall be governed by, the substantive and procedural laws (other than choice of law provisions, as to which no state's laws shall apply in light of the agreed upon application of California substantive law) of the State of California. If there is any conflict between any provision of this Agreement and any present or future statute, law, ordinance, regulation, or collective bargaining agreement, the latter shall prevail; provided, that the provision hereof so affected shall be limited only to the extent necessary and no other provision shall be affected.

10. Any and all disputes arising under or related to this Agreement shall be resolved by final and binding arbitration under the auspices of JAMS. Any such arbitration shall be held within thirty (30) miles of Ann Arbor, Michigan and arbitrated by a lawyer with a minimum of fifteen (15) years of experience in the entertainment industry. With respect to disputes regarding the reasonableness of a refusal by the Estate to approve an ancillary rights project falling under Category II of the ancillary rights provisions, the dispute shall be subject to expedited arbitration under the rules of JAMS regarding expedited arbitrations. In either type of

4

PETITION TO COMPEL ARBITRATION

arbitration, the Parties will request the appointment of an arbitrator with a minimum of fifteen (15) years of experience in the entertainment industry and with at least five (5) years of experience as a professional arbitrator. Except by agreement of the Parties, the arbitrator must conduct the arbitration, if in person, in Detroit, Michigan. Costs and reasonable attorneys' fees shall be awarded by the arbitrator to the prevailing party. Judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

(Pessah Decl., Exh. A, Secs. 9, 10)

Moreover, Section 15 of the Agreement provides, in pertinent part:

"***This Agreement***, and all of its terms and conditions, ***shall be binding upon*** and inure to the benefit of the Parties and their respective ***agents, representatives***, officers, directors, shareholders, employees, heirs, executors, administrators, descendants, subsidiaries, successors, assigns and legal representatives, ***whether a signatory hereto or not***."

(Pessah Decl., Exh. A, Sec. 15) (emphasis added)

## B.    The Estate's Representations and Warranties

As part of the Agreement, the Estate represented and warranted to Petitioner that it had not granted the rights granted therein to any third party. The Estate also promised that it would "not, either directly or indirectly, take any action that would interfere with the performance of this Agreement by any other Party which would adversely affect any of the rights provided for in this Agreement." (Pessah Decl., Exh. A, Sec. 7.7)  However, the Estate falsely represented and warranted to Petitioner that it was "the sole, exclusive and absolute owner of the rights" being granted in the Agreement, and that it had the "sole and exclusive and absolute right to grant or vest in [Petitioner], all rights, licenses and privileges granted to or vested in [Petitioner]" under the Agreement. (Pessah Decl., Exh. A, Sec. 8.2)

## C.    The Estate's Bad Faith Conduct

In June of 2025, AGM was approached by an acclaimed Hollywood producer ("Producer"), who sought to license a portion of the audio comprising the Concert Footage (the "Audio"). Producer, had been tapped to produce a documentary concerning the life of a certain public figure (the "Documentary"). (Pessah Decl., Exh. E, ¶ 32) The Documentary is not political or religious in nature. (Pessah Decl., Exh. E, ¶ 33-4)

Producer offered Petitioner payment to use approximately five minutes of the Audio in the Documentary ("Producer's Offer"). (Pessah Decl., Exh. E, ¶ 32) Petitioner was ready, willing and

able to deliver the rights, and complied with all applicable notice provisions of the Agreement, including notifying the Estate of the material terms of Producer's Offer. (Pessah Decl., Exh. E, ¶ 38-9) Pursuant to the Agreement, Petitioner sought the Estate's consent, which the Estate unreasonably withheld. (Pessah Decl., Exh. E, ¶ 38-40, 73)

Even after several rounds of discussions, wherein the Estate was provided with the material terms of the license, including the proposed fee, use, duration, territory, compensation, nature of the project and even a relevant clip from the Documentary, the Estate continued to claim that it did not have sufficient information to provide consent, but ***nevertheless declined to provide consent*** on grounds of "***potential implied religious and/or political connotations***." (Pessah Decl., Exh. E, ¶ 38-40) (emphasis added) The Agreement, however, does not bestow upon the Estate a right to withhold consent on grounds of political, religious or similar interpretations. (Pessah Decl., Exh. E, ¶ 73)

The Agreement is a commercial transaction between Petitioner and the Estate. (*Id.*) The Agreement does not countenance the Estate's interference with Petitioner's contractual rights or obligations on political or religious grounds, nor does it allow tortious interference with AGM's prospective economic advantages. Besides, the Documentary is educational and historical, not political or religious in nature. (Pessah Decl., Exh. E, ¶ 33-4)

The Estate's capricious and politically motivated rejection of Petitioner's request was (1) a violation of its promise not to withhold approval "unreasonably," (2) a blatant interference with Petitioner's prospective economic advantages, and (3) a flagrant breach of its implied covenant to act in good faith so as not injure or deprive Petitioner the benefits of the Agreement for which good and valuable consideration were duly paid, among other things. Indeed, the refusal to approve the Producer's Offer was not grounded in any commercially reasonable basis, but rather in an arbitrary, capricious and wholly unreasonable basis that is unsupported by any provision of the Agreement. (Pessah Decl., Exh. E, ¶ 73)  Denying consent based on personal taste, convenience or sensibility is not commercially reasonable. *See, e.g.*, *Locke v. Warner Bros.*, 57 Cal.App.4th 354, 363 (1997); *Kendall v. Ernest Pestana*, 40 Cal. 3d 488, 501 (1985).

PETITION TO COMPEL ARBITRATION

By unreasonably withholding consent to the Producer's Offer, the Estate was directly responsible for significant damages caused to AGM, and all attorneys' fees and costs incurred by AGM in bringing the subsequent Arbitration. (Pessah Decl., Exh. E, ¶ 79) The Producer's Offer was not consummated as it should and would have been, depriving AGM of proceeds to which it was entitled, as a direct result of the Estate's capricious and unreasonable refusal.

### D.     Arbitration and Interim Award

Only after Petitioner filed the Arbitration and obtained an interim award did it obtain some degree of relief. On October 22, 2025, Petitioner, as claimant, initiated the Arbitration. (Pessah Decl., ¶ 4) On November 10, 2025, Petitioner filed its Application for Emergency Relief pursuant to JAMS Rule 2 of the Comprehensive Arbitration Rules and Procedures (the "Application"), which was ultimately heard on November 14, 2025. (Pessah Decl., ¶¶ 5, 8) In the Application, Petitioner sought an order:

> (1) Enjoining the Estate from withholding consent to the Producer's Offer; (2) Enjoining the Estate from unreasonably interfering with Petitioner's right to consummate the Producer's Offer; (3) Enjoining the Estate from further interference with Petitioner's contractual rights pending final adjudication of this Arbitration; and (4) Enjoining the Estate from relying on non-commercial factors, like subjective political viewpoints, to withhold consent to any right of exploitation falling within certain portions of the Agreement.

(Pessah Decl., ¶ 5)

On November 13, 2025, the Estate filed its opposition to the Application (the "Opposition"), wherein the Estate confirmed again that Springtime is **wholly owned and controlled** by the Estate. (See, Pessah Decl., ¶ 6, Exh. B, Opp., at p. 8) The Declarations of Scott Pascucci ("Pascucci Decl.") and Michael Sukin ("Sukin Decl."), filed by the Estate in support of the Opposition further confirm the Estate's total ownership and control over Springtime. (See, Pessah Decl., ¶ 7, Exhs. C and D, respectively; Pascucci Decl., ¶¶ 24-5; Sukin Decl., ¶ 1, 13) In fact, the Estate acts as Springtime's President, Secretary, Treasurer, and sole director, all through its personal representative Andrew Mayoras who also serves as agent for service of process for both the Estate and Springtime. (See, Request for Judicial Notice ("RJN"), Exh. A)

On November 18, 2025, the Emergency Arbitrator issued an Interim Award granting Petitioner's Application, enjoining the Estate from "(A) withholding consent to the request from

7

PETITION TO COMPEL ARBITRATION

[Petitioner] of the Producer's Offer and the request to use [the Audio] in the Documentary; (B) unreasonably interfering with [Petitioner's] right to consummate the Producer's Offer; (C) further interference with [Petitioner's] contractual rights pending final adjudication of this Arbitration." (the "Interim Award," at p. 19) (See, Pessah Decl., Exh E, at p. 19). In the Interim Award, the Emergency Arbitrator made several important findings including, but not limited to the following:

*Relevant Finding No. 1*: "The Emergency Arbitrator finds and concludes that the rights requested are [subject to the Estate's] approval, "not to be unreasonably withheld." (Pessah Decl., Exh. E, ¶ 54);

*Relevant Finding No. 2*: "The Emergency Arbitrator finds and concludes that [Petitioner] has shown a likelihood of success at establishing that the rights granted under [relevant agreements] are sufficiently broad and all-encompassing to cover the license sought by the Producer's Offer for the […]Documentary." (Pessah Decl., Exh. E, ¶ 59) (emphasis added);

*Relevant Finding No. 3*: "[The Estate's] refusal to grant approval is not based on an objective commercial reason, or even an objective reason […]." (Pessah Decl., Exh. E, ¶ 73);

*Relevant Finding No. 4*: "[The Estate's] actions in negotiating for five months, delaying approval […] while in fact having no intention to approve anything […] based on a political dislike, is not exercising its discretion in good faith." (Pessah Decl., Exh. E, ¶ 74);

*Relevant Finding No. 5*: "[Petitioner] has met the burden of showing that it is likely to prevail on the claim that the Estate breached the Agreement and the covenant of good faith and fair dealing." (Pessah Decl., Exh. E, ¶ 75).

The Emergency Arbitrator further found and concluded that the Agreement is "an all-inclusive grant not only of the audio-visual rights in […] the Concert Footage, but also in the separate components of these materials, specifically the audio-only portion of music separate from the video portion of the materials." (Pessah Decl., Exh. E, ¶ 52)

PETITION TO COMPEL ARBITRATION

Only when Petitioner sought emergency relief, did it become apparent to Petitioner that the Estate intended to rely on Springtime to attempt to ensure that the Estate would not be held accountable for its breaches of the Agreement. The Emergency Arbitrator made specific reference to the Estate's clear and unambiguous declaration, at the hearing on the Application, that Springtime, wholly owned and controlled by the Estate, would ***never*** issue a synchronization license for the use of Amazing Grace in the Documentary. (Pessah Decl., Exh. E, at ¶ 57)

Following the issuance of the Interim Award and in anticipation of consummating the Producer's Offer pursuant thereto, Petitioner emailed the Estate on Thursday, November 20, 2025, stating:

> "In light of the injunction issued as part of the Emergency Arbitrator's Interim Award (the "Award"), please confirm that all necessary licenses, permissions and authorizations will be issued for [Petitioner] to proceed with the Producer's Offer. Please be advised that any further interference with [Petitioner's] rights, or any violation of the Award, will be aggressively pursued."

(See, Pessah Decl., ¶ 10, Exh. F)

On November 21, 2025, the Estate's counsel responded to Petitioner's email, stating only that the Estate and its counsel were unavailable. (Pessah Decl., Exh. G)

On November 24, 2025, Petitioner consummated the Producer's Offer, in reliance on the Interim Award. (Pessah Decl., ¶ 11) It was not until Tuesday, November 25, 2025, that the Estate informed Petitioner of its new posture. Namely, that Springtime "separately owns and controls the PA [Performing Arts] copyright interest in the arrangement of [the Audio] at issue and the synchronization licensing rights related thereto." (See, Pessah Decl., ¶ 12, Exh. H)  The Estate and Springtime then began aggressively pursuing separate discussions with a third party entity involved in the production of the Documentary (the "Licensee"), with whom Petitioner had consummated the Producer's Offer. (Pessah Decl., ¶ 13) The Estate and Springtime threatened litigation against the Licensee (including a threat to enjoin the release of the Documentary) unless the Licensee paid the Estate and Springtime for the rights to use the Audio in the Documentary—a right that the Emergency Arbitrator already found was Petitioner's to exercise. (*Id*.; Pessah Decl., Exh. E, ¶ 52)

The Estate and Springtime, acting in concert with one another, tortiously pursued a separate agreement with the Licensee by and through the Estate's counsel in the Arbitration. The common

PETITION TO COMPEL ARBITRATION

ownership and control that the Estate enjoys over Springtime, and the common action undertaken by them, was expressed in yet another manner—the use of litigation counsel in this case to actively circumvent the Interim Award and tortiously interfere with Petitioner's contractual rights and economic dealings with the Licensee. Meanwhile, the Estate and its counsel continue to insist that Springtime is a separate entity with its own set of rights to sell, in direct contravention of the Agreement, the Interim Award, the objective evidence, and applicable law. (Pessah Decl., Exh. H) Petitioner was contacted by the Licensee, who demanded an explanation as to why, after consummation of the Producer's Offer with Petitioner, the Licensee was being threatened with litigation and extorted by Springtime over a synchronization license which the Licensee believed it had already negotiated with Petitioner. (See, Pessah Decl., ¶ 14) As of the date hereof, the Licensee has threatened to assert claims against Petitioner relating to sums paid or payable to Springtime in connection with the purported synchronization license from Springtime. (*Id*.) These claims arise directly out of and in connection with the Estate and Springtime's pattern of misconduct with respect to the Agreement and subsequent consummation of the Producer's Offer.

It is undisputed and indisputable that the Estate fully owns and controls Springtime. (See, e.g., (Pessah Decl., Exh. A, Sec. 2(e); Exh. E, ¶ 57) In other words, Springtime does not, and cannot, act independently of the Estate. The Estate's express representations about the breadth and scope of rights it had and agreed to grant to Petitioner are either false or illusory—either way, those representations are material.  If such representations are indeed false, then a fraud has been committed in that Petitioner was induced to enter into the Agreement based on promises that are as material as they are specious. If they are illusory, and, as the Estate has argued in the Arbitration, Petitioner paid the Estate for nothing more than the ostensible right to seek consent to exploit rights that actually belong to Springtime, then a fraud has been committed in that Petitioner was induced to enter into the Agreement based on promises that are as material as they are specious.

On March 19, 2026, Petitioner filed an amended demand in the Arbitration, naming Springtime as a respondent. (Pessah Decl., ¶ 15) Petitioner has demanded that Springtime join in the Arbitration, including as recently as April 1, 2026, but Springtime has refused to join voluntarily, and the Estate has refused to cause Springtime to join voluntarily, despite having

"unilateral right and power" over Springtime. (Pessah Decl., ¶ 16) The refusal of the Estate and Springtime to voluntarily arbitrate now necessitates the filing of this Petition.

## IV. LEGAL STANDARD

California law favors enforcement of arbitration agreements. CCP § 1281.2 provides that where a party to an arbitration agreement refuses to arbitrate a controversy, the court shall order arbitration of the controversy if it determines that an agreement to arbitrate the controversy exists, subject to certain exceptions. A written agreement to submit a controversy to arbitration is valid and enforceable and, if the arbitration clause is self-executing, a prior court order to arbitrate under section 1281.2 is not necessary. *See, e.g.*, *Tutti Mangia Italian Grill, Inc. v. Am. Textile Maint. Co.*, 197 Cal. App. 4th 733, 739-40 (2011); *Mitchum, Jones & Templeton, Inc. v. Chronis*, 72 Cal. App. 3d 596, 600 (1977); *Kustom Kraft Homes v. Leivenstein*, 14 Cal. App. 3d 805, 810 (1971).

Generally, one must be a party to an arbitration agreement to be bound by it or to invoke it, but a nonsignatory to an agreement may be compelled to arbitrate in certain instances. *JSM Tuscany, LLC v. Superior Court*, 193 Cal.App.4th 1222, 1236–1237 (2011). The court, not the arbitrator, has the authority to decide whether a nonsignatory can be compelled to arbitrate. *Benaroya v. Willis*, 23 Cal. App. 5th 462, 489-9 (2018). California courts have identified six theories under which a nonsignatory may be compelled to arbitrate: (a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing or alter ego; (e) estoppel; and (f) third-party beneficiary. *Cohen v. TNP 2008 Participating Notes Program*, LLC, 31 Cal.App.5th 840, 859 (2019). *See also*, *Suh v. Superior Court*, 181 Cal.App.4th 1504, 1513 (2010); *UFCW & Emp'rs Benefit Tr. v. Sutter Health*, 241 Cal. App. 4th 909, 919 (2015).

Under the agency theory, courts have determined that compelling nonsignatories to arbitrate requires facts demonstrating the signatory's implicit or express authority to act on behalf of the nonsignatory, and that the agency relationship makes it equitable to compel the nonsignatory agent to arbitrate. *Cohen*, 31 Cal.App.5th at 859–860.

Under the equitable estoppel theory, a nonsignatory is compelled to join arbitration when it receives a "direct benefit" from a contract containing an arbitration clause. *Boucher v. Alliance Title Co., Inc.*, 127 Cal.App.4th 262, 268–269 (2005). A party "cannot have it both ways"—claiming the

PETITION TO COMPEL ARBITRATION

benefits of a contract while avoiding that contract's dispute-resolution mechanism. *Metalclad Corp. v. Ventana Environmental Organizational Partnership*, 109 Cal.App.4th 1705, 1713 (2003).

Where alter-ego liability is alleged, a nonsignatory may be compelled to join in arbitration upon a showing: (1) of a unity of interest and ownership between the signatory and non-signatory such that their separateness has ceased to exist; and (2) that there would be an inequitable result if the acts in question are treated as those of only one party. *See, e.g.*, *Sonora Diamond Corp. v. Superior Court*, 83 Cal.App.4th 523, 538 (2000); *Mesler v. Bragg Management Co.*, 39 Cal.3d 290, 300 (1985); *VirtualMagic Asia, Inc. v. Fil-Cartoons, Inc.*, 99 Cal. App. 4th 228, 244 (2002).

Finally, California Code of Civil Procedure Section 1281.2(c) provides an independent statutory basis for joinder. When a party to an arbitration agreement is also a party to litigation with a third party arising out of the same transaction or related transactions, and there is a possibility of conflicting rulings on a common issue of law or fact, the Court may order intervention or joinder of all parties in a single proceeding. *Acquire II, Ltd. v. Colton Real Estate Group*, 213 Cal.App.4th 959, 967–968 (2013).

## V. ARGUMENT

### A. SPRINGTIME IS BOUND BY THE EXPRESS TERMS OF THE AGREEMENTREQUIRING IT TO PARTICIPATE IN ARBITRATION

Springtime must be compelled to join in the Arbitration because, as an agent or representative of the Estate, the Estate expressly agreed to bind it to the terms of the Agreement. Where an agreement to arbitrate exists, subject to certain exceptions, the Court shall order the petitioner and respondent to arbitration. CCP § 1281.2. If the arbitration clause is self-executing, a court order to arbitrate under CCP § 1281.2 is not necessary. *See, e.g.*, *Tutti Mangia*, *supra*, 197 Cal. App. 4th at 739-40; *Mitchum, supra*, 72 Cal. App. 3d at 600; *Kustom Kraft, supra*, 14 Cal. App. 3d at 810.

Section 10 of the Agreement provides for arbitration of all disputes "arising under or relating to" the Agreement by "final and binding arbitration under the auspices of JAMS […]" (Pessah Decl., Exh. A, Sec. 10) Pursuant to Section 15 of the Agreement, the Estate bound its agents and representatives to the terms of the Agreement, including the arbitration provision, "whether a

12

PETITION TO COMPEL ARBITRATION

signatory (t)hereto, or not." (Pessah Decl., Exh. A, Sec. 15) Springtime is indisputably the agent and/or representative of the Estate, based on the repeated, unequivocal statements of the Estate in the Agreement and the Arbitration. (*See, e.g.*, Pessah Decl., Exh. A, Sec. 2(e); Exh. E, ¶ 57). Section 10 of the Agreement is self-executing, thereby obligating Springtime to participate in Arbitration, due to the claims brought arising under or relating to the Agreement, and no order of this Court is otherwise necessary. However, Springtime's refusal to submit to the Arbitrator's jurisdiction necessitates such an order, and the Court is obligated to issue such order, pursuant to CCP § 1281.2 ("the court shall order the petitioner and the respondent to arbitrate the controversy"), because none of the exceptions set forth in the statute apply here.

**B.     SPRINGTIME IS BOUND BY THE ARBITRATION CLAUSE UNDER THE PREEXISTING-RELATIONSHIP AND EQUITABLE ESTOPPEL DOCTRINES BECAUSE IT IS EXPRESSLY NAMED IN THE AGREEMENT AND ITS PERFORMANCE IS INTEGRAL TO THE RIGHTS GRANTED THEREIN**

*1.     The Preexisting-Relationship and Equitable-Estoppel Doctrines*

Springtime is bound by the Agreement as a non-signatory due to its relationship with the Estate and the express terms thereof. However, even if such provision is not relied upon by this Court, Springtime is nevertheless subject to compelled joinder to the Arbitration. Where a non-signatory has a sufficiently close preexisting relationship with a signatory such that any separateness has ceased to exist, or where the non-signatory's performance is so integral to the contract that the dispute cannot be adjudicated independently, the non-signatory may be compelled to arbitrate. *See, e.g., Suh, supra*, 181 Cal.App.4th at 1513; *DMS Services, LLC v. Superior Court*, 205 Cal.App.4th 1346, 1352–1353 (2012). Where a plaintiff's claims against the nonsignatory are dependent upon, or inextricably bound up with, the obligations imposed by the  contract, equitable estoppel independently bars a party from claiming benefits under a contract while repudiating that contract's arbitration clause. *Metalclad Corp., supra*, 109 Cal.App.4th at 1713; *Goldman v. KPMG LLP*, 173 Cal.App.4th 209, 229–230 (2009).

Here, Springtime is expressly named as an agent and instrumentality of the Estate in the Agreement. Specifically, the Estate covenanted to "cause music publisher Springtime Music to

13

PETITION TO COMPEL ARBITRATION

issue a gratis synchronization license" to Petitioner and warranted that it had the "unilateral right and power to cause Springtime to issue the synchronization license […]" (Pessah Decl., Exh. A, Sec. 2(e)) This provision identifies Springtime by name, allocates to it a specific and indispensable performance obligation, and reflects the parties' contemporaneous understanding that Springtime's cooperation was wholly subject to the Estate's direction. This provision further demonstrates Springtime's close and continuous relationship with the Estate, existing well before the execution of the Agreement. Springtime is not an incidental third party - it is a named participant in the contractual scheme.

Moreover, despite securing an arbitral finding that it possesses the right to consummate a deal with the Producer without interference from the Estate, Petitioner faces a renewed challenge from the Estate, who is acting by and through Springtime to meddle with Petitioner's business. Springtime is now threatening to sue Producer unless Producer pays money for a set of rights that Petitioner received in the Agreement. Having lost its fight to deprive Petitioner of consent to consummate a deal with the Producer, the Estate has dispatched Springtime to extract money from the Producer. The same lawyers who represent the Estate in the Arbitration represent Springtime in its scheme to hustle the Producer into paying more money. The lawyers for Estate/Springtime simultaneously claim that Springtime is separate and distinct, a contention that is contradicted by the evidence.

Allowing Springtime to remain outside the Arbitration while asserting licensing rights that the Arbitrator has already found are "sufficiently broad and all-encompassing" for Petitioner to transact with the Producer would produce conflicting outcomes—precisely what § 1281.2(c) is designed to prevent.

**C.   SPRINGTIME IS BOUND BY THE ARBITRATION CLAUSE AS AN AGENT OF THE ESTATE**

*1.   The Agency Doctrine Extends Arbitration Obligations to Non-Signatory Agents*

Under California law, a non-signatory agent is bound by its signatory principal's arbitration agreement with respect to disputes arising from acts taken within the scope of the agency. *See, e.g.,*

*Rowe, supra*, 153 Cal.App.4th at 1285("(a) nonsignatory who is the agent of a signatory can even be compelled to arbitrate claims against his will."); *Thomas, supra*, 204 Cal.App.4th at 614–615; *Garcia, supra*, 11 Cal.App.5th at 786–788. This is a bilateral rule: the principal's counterparty may compel the agent to arbitrate claims arising from the same transactions. *Rowe*, 153 Cal.App.4th at 1285–1286. The "chief element" of agency is the principal's right to control the manner of the agent's performance. Civ. Code, § 2295; *Malloy v. Fong*, 37 Cal.2d 356, 370 (1951).

### 2.    *The Record Establishes a Textbook Agency Relationship*

The agency relationship between the Estate and Springtime is established by undisputed and indisputable evidence. As Springtime's sole President, Secretary, Treasurer, and Director, the Estate (acting through Mayoras) possesses plenary authority over every aspect of Springtime's business decisions. The Estate's own counsel, Michael Sukin, declared that Springtime is the Estate's "wholly owned music publishing company" acting as the licensing vehicle through which the Estate exercises music publishing rights. (Pessah Decl., Exh. D, ¶¶ 1, 13) Sukin further declared that the Estate possessed the "absolute right" to deny the license at issue because the license had to issue from "the Estate's music publisher Springtime Music." (*Id*. at ¶ 17) There can therefore be no dispute that Springtime is an agent of the Estate.

Moreover, the Agreement itself expressly confirms the agency relationship: the Estate represents that it has the "***unilateral right and power to cause Springtime to issue***" synchronization licenses, as an acknowledgment of the right of control that defines agency. (Pessah Decl., Exh. A, Sec. 2(e)) The Estate's attorneys, Sukin Colton, also executed Springtime's post-Interim Award solicitation to the Licensee, further reinforcing the Estate's involvement in and direction of Springtime's conduct. Springtime's entire involvement in this dispute—its claimed synchronization rights, its post-Interim Award solicitation of and threats against the Licensee, and its interference with Petitioner's contractual relationships—flows directly from, and cannot be adjudicated independently of, the Agreement.

15

**D.      SPRINGTIME IS THE ALTER EGO OF THE ESTATE AND IS THEREFORE BOUND BY THE ESTATE'S ARBITRATION OBLIGATION**

### 1.      *Unity of Interest and Ownership Is Complete*

The unity of interest and ownership between the Estate and Springtime is undeniably complete and total. The Estate has already admitted that it wholly owns and controls Springtime, including holding every corporate office of Springtime—President, Secretary, Treasurer, and Director—simultaneously. (See, RJN, Exh. A.) Andrew Mayoras is simultaneously the Estate's personal representative and Springtime's registered agent. (*Id*.) The Estate and Springtime share the same litigation counsel (Brian Caplan and Jon Colman), including with respect to pre-litigation negotiations, the Arbitration, and the post-Interim Award solicitation of the Producer. The Agreement itself treats Springtime as an instrument of the Estate, wholly subject to its unilateral direction. There is no evidence that Springtime engaged in any independent board or officer action, or sought legal advice separate from the Estate's counsel at any relevant time. The entities speak with one voice because they are one and they have only one voice.

Courts have found alter ego where there exists identical equitable ownership in the two entities, the use of the same offices and employees, the use of one as a mere shell or conduit for the affairs of the other, and identical directors and officers. Sonora, supra, 83 Cal.App.4th at 539–540. Here, the picture is complete: (a) the Estate holds every one of Springtime's corporate offices simultaneously, (b) Andrew Mayoras is the personal representative of the Estate and the agent for service of process for Springtime, (c) the attorneys who represent the Estate in this Arbitration executed Springtime's post-Award solicitation of the Producer, and (d) Springtime is, in fact, wholly owned and controlled by the Estate, rendering it a mere conduit for the Estate's affairs. (Pessah Decl., Exh. A, Sec. 2(e), Exh. C, ¶¶ 24-5, Exh. D, ¶ 1, 13, Exh. E, ¶ 57; RJN, Exh. A) Accordingly, the unity of ownership and interest between the two is complete and unmistakable, and the first prong of the alter ego test is satisfied.

16

PETITION TO COMPEL ARBITRATION

**2.      *Adherence to Corporate Separateness Would Promote An Inequitable Result***

The second prong of the alter ego test concerns whether the tribunal's adherence to the corporate separateness of the alter egos would promote an inequitable result. *See, e.g.*, *Sonora, supra*, 83 Cal.App.4th at 538–9; *Mesler, supra*, 39 Cal.3d at 300; *VirtualMagic Asia, supra*, 99 Cal. App. 4th at 244. This second prong is satisfied on at least three independent grounds.

First, the Emergency Arbitrator enjoined the Estate from withholding consent and from unreasonably interfering with Petitioner's right to consummate the Producer's Offer. (Pessah Decl., Exh. E. at p. 19) Despite the order, and contrary to its own open declaration that no license would ever be issued by Springtime in connection with the Producer's Offer, the Estate deployed Springtime—with actual notice of the Interim Award and through the Estate's own attorneys—to demand an identical sum from the same producers for the same license as the then-consummated Producer's Offer. (Pessah Decl., ¶ 13-4; Exh. E, ¶ 57) In doing so, the Estate sought to accomplish through Springtime precisely what the Interim Award forbid the Estate to do directly. Employing Springtime, its wholly owned and controlled agent and instrument, the Estate expressly sought to circumvent an arbitral injunction - a paradigmatic use of the alter-ego doctrine.

Second, the Estate induced the Interim Award, at least in part, by representing and declaring that Springtime would never issue the synchronization license needed to consummate the Producer's Offer, ***despite Springtime not being a party to the Agreement or the Arbitration***. (Pessah Decl., Exh. E, ¶ 57) The Estate unequivocally spoke for Springtime and weaponized its anticipatory non-compliance and misconduct as a sword to resist relief during the Application hearing. Having done so, neither the Estate nor Springtime can now invoke Springtime's purported separateness as a shield against the Interim Award or the consequences of their actions. This is the classic inconsistent-position injustice the alter-ego doctrine condemns.

Third, Petitioner paid a significant sum for rights the Estate warranted it owned exclusively. If those representations were true, then Springtime's parallel demand that the Licensee pay it for a synchronization license is an extortion scheme enabled by the corporate fiction. If such representations were false, Petitioner was defrauded into consenting to the Agreement. In either case, allowing the Estate to exploit Springtime's separate existence to nullify the Interim Award

17

would be manifestly unjust. Absent joinder of Springtime into the Arbitration, Petitioner faces duplicate litigation, conflicting rulings, and secondary liability to the Licensee - all costs flowing directly from the Estate's use of Springtime, its alter ego, as a corporate shield.

Therefore, were a tribunal to adhere to the fiction of the separateness of the Estate and Springtime, the result would be deeply inequitable and unjust to Petitioner.

**E.      JOINDER IS INDEPENDENTLY REQUIRED UNDER § 1281.2(c) TO AVOID INCONSISTENT RULINGS AND TO OBTAIN COMPLETE RELIEF**

Even if none of the independently sufficient theories above were satisfied, which they all are, CCP § 1281.2(c) provides a freestanding and appropriate basis for compelling Springtime's joinder to the Arbitration. Springtime and/or the Estate has asserted—through the Estate's counsel—that only Springtime may grant the synchronization license needed for Petitioner to consummate the Producer's Offer, and threatened the Producer with litigation to enforce that position. If a California court were to adjudicate any portion of Petitioner's dispute with the Estate and Springtime separately from the Arbitration, it could reach findings inconsistent with the Emergency Arbitrator's already-issued conclusions that Petitioner's rights are "sufficiently broad and all-encompassing" to consummate the Producer's Offer. The Interim Award, and a final award based thereupon, would be rendered a nullity.

Without Springtime's joinder in the Arbitration, complete relief is impossible. Furthermore, the Estate will continue to direct Springtime's misconduct otherwise forbidden under the Interim Award, and interfere with Petitioner's contractual rights, resulting in continuing injury. Moreover, certain claims brought against the Estate and Springtime jointly could be decided differently in different venues, resulting in conflicting rulings. These paradigmatic circumstances alone warrant joinder under CCP § 1281.2(c).

## VI. PRAYER FOR RELIEF

WHEREFORE, Petitioner Amazing Grace Movie, LLC respectfully requests that this Court issue an order:

1.      Compelling Respondent Springtime Publishing, Inc. to submit to, and participate as a joined respondent in, JAMS Arbitration, Ref. No. 5345000713, pursuant to the express provisions

of the Agreement, the doctrines of preexisting relationship, agency, and/or alter ego, and/or the application of California Code of Civil Procedure § 1281.2;

2.     Alternatively, ordering Springtime Publishing, Inc.'s intervention or joinder in a single proceeding, including the pending Arbitration, to avoid conflicting rulings on common issues of law and fact, pursuant to CCP § 1281.2(c);

3.     Staying any separate civil action or proceeding brought by or against Springtime Publishing, Inc. concerning the rights at issue in or relating to the subject matter of the Arbitration, whether now in existence or which may be asserted after the date hereof, pending completion of the Arbitration, pursuant to Code of Civil Procedure § 1281.2(d);

4.     Declaring that Springtime Publishing, Inc., as an agent, alter ego, and instrumentality of the Estate, is bound by the Agreement, and therefore also bound by the Interim Award dated November 18, 2025, and that Springtime may not take any action inconsistent with the Interim Award;

5.     Awarding Petitioner reasonable attorneys' fees and costs incurred in connection with this Petition; and

6.     Granting Petitioner such other and further relief as this Court deems just and proper.

DATED:     April 3, 2026                    PESSAH LAW GROUP, PC


                                           /s/ Eli Melamed
                                           _____
                                           Eli Melamed, Esq.
                                           Attorneys for Petitioner
                                           AMAZING GRACE MOVIE, LLC

19

PETITION TO COMPEL ARBITRATION

Electronically FILED by
Superior Court of California,
County of Los Angeles
4/03/2026 1:09 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By D. Williams, Deputy Clerk

MAURICE D. PESSAH (SBN: 275955)
*maurice@pessahgroup.com*
ELI MELAMED (SBN: 301790)
*emelamed@pessahgroup.com*
**PESSAH LAW GROUP, PC**
9100 Wilshire Blvd., Suite 850E
Beverly Hills, CA 90212
Tel: (310) 772-2261

Attorneys for Petitioner
Amazing Grace Movie, LLC

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

# COUNTY OF LOS ANGELES

| | |
|---|---|
| AMAZING GRACE MOVIE, LLC, a California limited liability company;<br><br>            Petitioner,<br><br>   v.<br><br>SPRINGTIME PUBLISHING, INC., a Michigan corporation,<br><br>            Respondent. | Case No.:    26STCP01358<br><br>**DECLARATION OF MAURICE PESSAH IN SUPPORT OF PETITION TO COMPEL ARBITRATION** |

DECLARATION OF MAURICE PESSAH

## DECLARATION OF MAURICE PESSAH

I, Maurice Pessah, hereby declare:

1. I am individual over the age of 18 years and an attorney at law duly licensed to practice in California. I am lead counsel to Amazing Grace Movie, LLC ("Petitioner") in that certain JAMS Arbitration relevant to the Petition in support of which this Declaration is filed (JAMS Case No. 5345000713, the "Arbitration") and, by virtue thereof, I am familiar with the facts and issues set forth herein.

2. I make the following declaration in support of Petitioner's Petition (the "Petition") to Compel Joinder of Springtime Publishing, Inc. ("Springtime") to Arbitration.

3. Attached hereto as **Exhibit A** is a copy of that certain Agreement dated March 21, 2019 (the "Agreement") between The Estate of Aretha Franklin (the "Estate") and (among other parties) Petitioner. The version of the Agreement attached hereto is redacted to minimize disclosure of material terms, and in order to comply with Section 5 of the Agreement.

4. Petitioner initiated the Arbitration on October 22, 2025, concerning a dispute over the use and exploitation of certain rights granted to Petitioner pursuant to the Agreement. Specifically, Petitioner sought consent to license the use of certain audio (the "Audio") to which it had received rights under the Agreement, for use in a third-party produced documentary (the "Documentary"), and the Estate unreasonably withheld consent thereto. The contemplated licensing of the Audio for the Documentary is referred to herein as the "Producer's Offer."

5. On November 10, 2025, Petitioner filed an Application for Emergency Relief pursuant to JAMS Rule 2 of the Comprehensive Arbitration Rules and Procedures (the "Application"), seeking an order from the Emergency Arbitrator:

    a. Enjoining the Estate from withholding consent to the Producer's Offer;

    b. Enjoining the Estate from unreasonably interfering with Petitioner's right to consummate the Producer's Offer;

    c. Enjoining the Estate from further interference with Petitioner's contractual rights under the Agreement pending final adjudication of the Arbitration; and,

      d. Enjoining the Estate from relying on non-commercial factors, like subjective political viewpoints, to withhold consent to any right of exploitation falling within certain portions of the Agreement.

6. On November 13, 2025, the Estate filed its Opposition (the "Opposition") to the Application. Attached hereto as **Exhibit B** is a copy of the Opposition, which is redacted to minimize disclosure of material terms, in order to comply with Section 5 of the Agreement, as well as to protect sensitive information of Petitioner, the Estate, and relevant third parties.

7. In connection with the Opposition, the Estate filed the Declarations of Scott Pascucci ("Pascucci Decl.") and Michael Sukin ("Sukin Decl."). Attached hereto as **Exhibit C** is a copy of the Pascucci Decl. (exhibits omitted), which is redacted to minimize disclosure of material terms, in order to comply with Section 5 of the Agreement, as well as to protect sensitive information of Petitioner, the Estate, and relevant third parties. Attached hereto as **Exhibit D** is a copy of the Sukin Decl. (exhibits omitted), which is redacted to minimize disclosure of material terms, in order to comply with Section 5 of the Agreement, as well as to protect sensitive information of Petitioner, the Estate, and relevant third parties

8. The Application was heard on November 14, 2025.

9. On November 18, 2025, the Emergency Arbitrator issued an Interim Award in Petitioner's favor (the "Interim Award"). Attached hereto as **Exhibit E** is a copy of the Interim Award, which is redacted to minimize disclosure of material terms, so as to comply with Section 5 of the Agreement, as well as to protect sensitive information of Petitioner, the Estate, and relevant third parties.

10. On November 20, 2025, I emailed counsel for the Estate, Jonathan Colman and Brian Caplan, requesting the Estate and Springtime's cooperation in consummation of the Producer's Offer. Attached hereto as **Exhibit F** is a copy of my email to counsel, which is redacted to minimize disclosure of material terms, in order to comply with Section 5 of the Agreement, as well as to protect sensitive information of Petitioner, the Estate, and relevant third parties. The next day, November 21, 2025, Mr. Colman responded to my email as follows: "Maurice, Andy and Brian are unavailable today. Jon." Attached as **Exhibit G** is a true and correct copy of Mr. Colman's response.

11. On November 24, 2025, having received no response from the Estate, Petitioner consummated the Producer's Offer, in reliance on the Interim Award.

12. On November 25, 2025, counsel for the Estate and Springtime informed our office of its new posture. Namely, that Springtime separately owns and controls the PA [Performing Arts] copyright interest in the arrangement of the Audio and the synchronization licensing rights related thereto. Attached hereto as **Exhibit H** is a copy of Brian Caplan's email to me on November 25, 2025, which is redacted to minimize disclosure of material terms, in order to comply with Section 5 of the Agreement, as well as to protect sensitive information of Petitioner, the Estate, and relevant third parties.

13. On or about November 30, 2025, I was contacted by the Licensee, and informed that the Estate and Springtime had threatened litigation against the Licensee (including a threat to enjoin the release of the Documentary) unless the Licensee paid the Estate and Springtime for the rights to use the Audio in the Documentary.

14. Due to the threats of litigation asserted against the Licensee by the Estate and Springtime, the Licensee has now threatened to assert claims against Petitioner relating to sums paid or payable to Springtime in connection with the purported synchronization license from Springtime for the Audio.

15. On March 19, 2026, Petitioner filed an amended demand in the Arbitration, naming Springtime as a respondent.

16. Despite demands by Petitioner that Springtime join the Arbitration voluntarily, or that the Estate cause Springtime to join the Arbitration, both the Estate and Springtime have refused to comply, including as recently as April 1, 2026.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___April 3, 2026___ at Beverly Hills, California.


/s/ Maurice Pessah
_____
Maurice Pessah

DECLARATION OF MAURICE PESSAH

# EXHIBIT A

# AGREEMENT

**THIS AGREEMENT is made** as of March 21, 2019 (the "Effective Date") by and between ███████ ███████████████████████████ Amazing Grace Movie, LLC ("AGLLC") (all collectively and jointly and severally bound hereunder as "AE," except as otherwise provided in par.10A below), ███████ ███████████████████████████ and the Estate of Aretha Franklin (the "Estate") ███████ ███████████████████████████████████████████████████ , each of whom may be referred to as a "Party" and/or collectively as "Parties".

   **WHEREAS,** ███████████████████████████████████████████ ███████████████████ ███████████████████████████████ ███████████████████ ███████████████████████████████ ███████████████████ ;

   **WHEREAS,** ███████ the Concerts were filmed and recorded (the audio and visual recordings thereof, collectively, the "Concert Footage") ███████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████ ;

   ███████ ███████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████ ;

   ███████ ███████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████ ███████████████████████████████ ;

   ███████ ███████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████ ███████████████████████████████ ;

   ███████ ███████████████████████████████████████ ███████████████████████████████████████████████████████████████ ;

   **WHEREAS,** ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████ ;

███████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████████
████████████████████████ ;

███████████████████████████████████████████████████████

██████████████████████████████████████████████████████████
█████████████████████████████████

███████████████████████████████████████████████████
████████████████████

**NOW THEREFORE**, in consideration of the covenants and promises set forth in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which the Parties do hereby acknowledge, they hereby agree to the following:

1. ████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████████████ :

███████████████████████████████████████████████████
███████████████████████████████████████████████████
██████████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
███████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████ .

2. <u>GRANT OF RIGHTS</u>:

(a) ████████████████████████████████ the Estate hereby ████
██████████████████ assigns exclusively to AE, all rights of each and every kind, nature, and character whatsoever that the Estate possesses in and to the ████████████████
██████████████████████████ Concert Footage ████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
█████████████████████████████████████████████ , subject in all instances to the terms and conditions of this Agreement ███████████████
████████████████████████████ ████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████

2

█████████████████████████████████



throughout the world (the "Territory"). ████████████████████████████████

(b) ████████████████████████████████████████████████████████████

(c) ████████████████████████████████████████████████████████████

(d) ████████████████████████████████████████████████████████████

(e)  The Estate will cause music publisher Springtime Music ("Springtime") to issue a gratis synchronization license (the "AG Synch License") to AE ████████████████████████████ ████████████████████████████████████████

3



██████████████████████████████████████. The Estate represents and warrants that it has the unilateral right and power to cause Springtime to issue the AG Synch License ████████ ████████████.

████████████████████████████████████████████████████████████████████

**3.** ████████████████

3.1 ██████████████████

(a) ████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████

i. ████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████

ii. ████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████████████

████████████████
██████████████████
████████████
██████████
████████████
██████████████████████
██████████████████████

(b) ████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

4

████████████████████████████



5



**4.3** ███████████████████████████████████████

**4.4 (a)** █████████████████████████████████████

    **(b)** ███████████████████████████████████

5.   **CONFIDENTIALITY AND NONDISCLOSURE**███████████████:████████████
███████████████████████████████████████████████ Except as
necessary to carry out the terms of this Agreement, or with the other Party's written consent, the terms of
this Agreement shall not be disclosed except to family members, beneficiaries, lawyers, accountants,
banks, insurers, financing sources or otherwise as may be reasonably necessary in the conduct of a Party's
or beneficiary's business affairs.

6.   ████████████████

7.   **MUTUAL REPRESENTATIONS, WARRANTIES, AND COVENANTS:** Each Party to this
Agreement acknowledges, represents, warrants, and covenants as to itself and no other party:

7.1 ██████████████████████████████████████

6

7.2

7.3 ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████;

7.4 ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

7.5 ██████████████████████████████████████████████████████████████████████;

7.6 ██████████████████████████████████████████

7.7 That the Party will not, either directly or indirectly, take any action that would interfere with the performance of this Agreement by any other Party which would adversely affect any of the rights provided for in this Agreement;

7.8 ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

7.9 ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

**8.**　████████████████████████████████

8.1 █████████████████████████████████████████████████████████████████████████████████████████████████████████████████

8.2 The Estate is the sole, exclusive and absolute owner of the rights granted herein, and has the sole, exclusive and absolute right to grant or vest in AE, all rights, licenses and privileges granted to or vested in

7

████████████████████████████

AE under this Agreement. ███████████████████████████
█████████████████████████████
█████████████████████████████

8.3 ██████████████████████████████████████
████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
█████████

**9.** **GOVERNING LAW:** The Parties stipulate and agree that this Agreement shall be deemed for all purposes to have been made and entered into entirely in the State of California and shall be construed and interpreted in accordance with, and shall be governed by, the substantive and procedural laws (other than choice of law provisions, as to which no state's laws shall apply in light of the agreed upon application of California substantive law) of the State of California. If there is any conflict between any provision of this Agreement and any present or future statute, law, ordinance, regulation, or collective bargaining agreement, the latter shall prevail; provided, that the provision hereof so affected shall be limited only to the extent necessary and no other provision shall be affected.

**10.** **DISPUTE RESOLUTION/NO EQUITABLE RELIEF:**
Any and all disputes arising under or related to this Agreement shall be resolved by final and binding arbitration under the auspices of JAMS. Any such arbitration shall be held within thirty (30) miles of Ann Arbor, Michigan and arbitrated by a lawyer with a minimum of fifteen (15) years of experience in the entertainment industry. With respect to disputes regarding the reasonableness of a refusal by the Estate to approve an ancillary rights project falling under Category II of the ancillary rights provisions, the dispute shall be subject to expedited arbitration under the rules of JAMS regarding expedited arbitrations. In either type of arbitration, the Parties will request the appointment of an arbitrator with a minimum of fifteen (15) years of experience in the entertainment industry and with at least five (5) years of experience as a professional arbitrator. Except by agreement of the Parties, the arbitrator must conduct the arbitration, if in person, in Detroit, Michigan. Costs and reasonable attorneys' fees shall be awarded by the arbitrator to the prevailing party. Judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

10A. ████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
███████████████████████████████

(a) ████████████████████████████
██████████████████████████████████
████████████████████████

8

████████████████████████████

(b) ██████████████████████████████████████████████
████████████████████████████████████ .

11.    ██████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████ .

12.    ██████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████ .

13.    ████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████ .

14.    ████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████████ .

15.    **BINDING EFFECT:** This Agreement, and all of its terms and conditions, shall be binding upon and inure to the benefit of the Parties and their respective agents, representatives, officers, directors, shareholders, employees, heirs, executors, administrators, descendants, subsidiaries, successors, assigns and legal representatives, whether a signatory hereto or not. ████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████
██████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████

16.    ████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████

████████████████████████████████



**17.** ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

**18.** ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.

**19.** ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

█████████████████████████████████████

**20.**

**21.**

**22.**

[EXECUTION PAGE FOLLOWS]

IN WITNESS WHEREOF, the Parties hereby acknowledge and represent that they have each read this Agreement, consisting of a total of 23 pages, and that they have executed this Agreement as of the day and year first set forth above.

Amazing Grace Movie, LLC

By: _____

Estate of Aretha Franklin

By:_____

ACKNOWLEDGED AND AGREED:

Attorney for the Estate of Aretha Franklin

By:_____

12

██████████████████████████████████████

████

██: _____

██: _____

13

████████████████████████████



14



15





17

18

█████████████████████████████████████████████

Personal Representative for the Estate of Aretha Franklin

STATE OF _Michigan_ )
                  )SS.
COUNTY OF _Washtenaw_ )

SUBSCRIBED, SWORN TO AND ACKNOWLEDGED before me this 22 day of March 20 by ███████████ solely as Personal Representative for the Estate of Aretha Franklin.

JENNIFER M. SYMANNS
NOTARY PUBLIC, STATE OF MI
COUNTY OF WASHTENAW
MY COMMISSION EXPIRES Dec 14, 2021
ACTING IN COUNTY OF _Washtenaw_

My Commission Expires:

_12/14/2021_

Notary Public

17

18



| ████████████ | ██████ |
|---|---|
| ███████████████<br>███████████████<br>████████████<br>████████ | ██████<br>███████████████████████████████<br>███████████████████████████████<br>███████████████████████████████<br>███████████████████████<br><br>████████<br>██████████████████████████<br>███████████████████████████████<br>██████████████████████████<br>██████████████████████████<br>█████████████████████████<br>███████████████████████████████<br>███████████████████████████████<br>████████████████████████<br>█████████████████████████<br>██████████████████████████<br>███████████████<br><br>████████<br>███████████████████████████████<br>██████████████████████████<br>███████████████████████████████<br>██████████████████████ |
| ███████████████████<br>███████████ | █████████. |
| ██████████████████████<br>████████████████████<br>████████████████████<br>██████████<br>█████████████ | ███████████████████████████████<br>███████████████████████████████<br><br>███████████████████████████████<br>███████████████████████████████<br>████████████████████████<br>████████ |

19

████████████████████████████





| | |
|---|---|
| ██████████ ██████████ ██████ | ██████████████████████ ██████████████████████ ██████ |
| ████████████ ████ ████████████ ██████████████ █ | ———— |
| ██████████ ████ ██████ | ———— |
| ██████████ ████ ██████ | ———— |
| ██████████████ ██████ | ———— |
| ██████████████ ██████ | ████████████████████ ████████████████████████ ████ \n\n ████████████████████████ ██████ |
| ██████████ ██████ | ████████████████████████ |
| ██████████████ ████ ██████ | ———— |
| ██████████ ████████████ ████████████ ████ ██████ | ———— |

██████████████████████



23

# EXHIBIT B

Jonathan M. Colman
Barron, Rosenberg, Mayoras & Mayoras P.C.
1301 West Long Lake Road, Suite 340
Troy, Michigan 48098
(248) 641-7070
jcolman@brmmlaw.com

Brian D. Caplan
Reitler Kailas & Rosenblatt LLP
885 Third Avenue, 20th Floor
New York, NY 10022
(212) 209-3050
bcaplan@reitlerlaw.com

*Attorneys for Respondent Andrew Mayoras,
as Representative of the ESTATE OF ARETHA
FRANKLIN*

## JAMS

| | |
|---|---|
| AMAZING GRACE MOVIE, LLC, a California Limited Liability Company, <br><br> Claimant, <br><br> v. <br><br> ANDREW MAYORAS, as Representative of the ESTATE OF ARETHA FRANKLIN; KECALF FRANKLIN, in his personal capacity; ROES 1-50, <br><br> Respondents. | Case No. 5345000713 |

**RESPONDENT'S MEMORANDUM OF LAW IN OPPOSITION TO
CLAIMANT'S APPLICATION FOR EMERGENCY RELIEF**

████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████

i



Respondent Andrew Mayoras, as Representative of the Estate of Aretha Franklin (the "Estate"), respectfully submits this Memorandum of Law in Opposition to the Application for Emergency Relief by Claimant Amazing Grace Movie, LLC ("AGM") pursuant to JAMS Rule 2(c)(iv).









███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████ Springtime Music, wholly owned by the Estate, ██████████████████

████████████████████████████████████████ (*See* Declaration of Michael Sukin dated November 13, 2025 ("Sukin Decl."), ¶¶ 1, 13.)

██    ████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

8





11











17



18



20

██████████

████████████████████████████████████████████

███████████████

Dated: November 13, 2025

Respectfully submitted,

BARRON, ROSENBERG, MAYORAS
& MAYORAS P.C.

 *s/ Jonathan M. Colman*
Jonathan M. Colman
1301 West Long Lake Road, Suite 340
Troy, Michigan 48098
(248) 641-7070
jcolman@brmmlaw.com

REITLER KAILAS & ROSENBLATT LLP
Brian D. Caplan
885 Third Avenue, 20th Floor
New York, NY 10022
(212) 209-3050
bcaplan@reitlerlaw.com

*Attorneys for Respondent Andrew Mayoras,
as Representative of the ESTATE OF ARETHA
FRANKLIN*

# EXHIBIT C

Jonathan M. Colman
jcolman@brmmlaw.com
Barron, Rosenberg, Mayoras & Mayoras P.C.
1301 W. Long Lake Road, Suite 340
Troy, MI 48098
Tel. (248) 641-7070

Brian D. Caplan
bcaplan@reitlerlaw.com
Reitler Kailas & Rosenblatt LLP
885 Third Avenue, 20th Floor
New York, NY 10022
Tel. (212) 209-3050

Attorneys for Respondent Andrew Mayoras,
as Representative of the ESTATE OF ARETHA
FRANKLIN

**JAMS**

| | |
|---|---|
| AMAZING GRACE MOVIE, LLC, a California Limited Liability Company, <br><br> Claimant, <br><br> v. <br><br> ANDREW MAYORAS, as Representative of the ESTATE OF ARETHA FRANKLIN; KECALF FRANKLIN, in his personal capacity, ROES 1-50 <br><br> Respondents. | Case No. 5345000713 <br><br> **DECLARATION OF SCOTT PASCUCCI IN OPPOSITION TO APPLICATION FOR EMERGENCY RELIEF** <br><br> Demand Filed: October 22, 2025 |

Scott Pascucci, declares the following statements to be true under the penalty of perjury:

1. ███████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

1

2.    ████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████

3.    ██████████████████████████████████████████████

███████████████████████████████

████████████████████████████████

4.    ██████████████████████████████████████████████

██████████

█    ████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████

█    ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

█    ████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████

█    ████████████████████████████████████████████████

██████████████████████████████████████

█    ████████████████████████████████████

█    ████████████████████████████████



5.



6.

7.

8.    ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████

████████████████████████████████████████████████

9.    ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

10.    ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████

11.    ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████

12.    ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

5

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

13.    ██████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████

████████████████████████████████████████

14.    ██████████████████████████████████████

████████████████████████████████████████████████

████

15.    ██████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████



16.

17.

18.

███████████████████████████████████████████████

████████████████

19.    ██████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████

20.    ██████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

21.    ██████████████████████████████████████

███████████████████████████████████████████████

8



22.

23.

24.     I am advised that Springtime Music is the d/b/a for Springtime Music Publishing Inc. and is 100% owned by the Estate.

25.     I am further informed that no synchronization license from the Estate-owned Springtime Music has ever been issued for use in ██████████████████████ ████████████████████ the documentary.

████████████████████████████████████████

██████████████████████████

██████████████████████████

26.     ████████████████████████████████

████████████████████████████████████████

██████████████

27.     ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████

28.     ████████████████████████████████

████████████████████████████████████████

████████████████████████████████

29.     ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████

10

30.

31.

32.

33.

I declare under penalty of perjury that the foregoing is true and correct.

11

Executed on November 13, 2025



Scott Pascucci

12

# EXHIBIT D

Jonathan M. Colman
jcolman@brmmlaw.com
Barron, Rosenberg, Mayoras & Mayoras P.C.
1301 W. Long Lake Road, Suite 340
Troy, MI 48098
Tel. (248) 641-7070

Brian D. Caplan
bcaplan@reitlerlaw.com
Reitler Kailas & Rosenblatt LLP
885 Third Avenue, 20th Floor
New York, NY 10022
Tel. (212) 209-3050

Attorneys for Respondent Andrew Mayoras,
as Representative of the ESTATE OF ARETHA
FRANKLIN

**JAMS**

| | |
|---|---|
| AMAZING GRACE MOVIE, LLC, a California Limited Liability Company,<br><br>Claimant,<br><br>v.<br><br>ANDREW MAYORAS, as Representative of the ESTATE OF ARETHA FRANKLIN; KECALF FRANKLIN, in his personal capacity, ROES 1-50<br><br>Respondents. | Case No. 5345000713<br><br>**DECLARATION OF MICHAEL SUKIN IN OPPOSITION TO APPLICATION FOR EMERGENCY RELIEF**<br><br>Demand Filed: October 22, 2025 |

Michael Sukin, declares the following statements to be true under penalty of perjury:

1.    I am an attorney ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████ representing the Aretha Franklin Estate, and its wholly owned

music publishing company Springtime Music Publishing Inc. d/b/a Springtime Music ██████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████ .

1



████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████

5. ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████

6. ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████

7. ████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████

████████████████████████████████████████████████████████

██████████████████████████



8.

9.

10.

4

5

███████████████████████████████████████████████████████████

███████████████████████████

11.   ████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████

12.   ████████████████████████████████████████████████

█████████████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████

██████████████████████████

13.   ██████████████████████████████████████████████

█████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████ Pundit was Ms. Franklin's music publishing company in 1973 and its rights are now owned by Springtime Music, the Franklin Estate's wholly owned music publisher.

14.   ████████████████████████████████████████████████

█████████████████████████████████████████████████████████

██████████████████████████████████████████



15. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮

16. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮

17. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ the Estate's music publisher Springtime Music, the Estate has the "absolute" right to deny such license.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



19.

20.

21.

22.

23.    ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████

24.    ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████

25.    I declare under the penalty of perjury that the foregoing is true and correct.

Executed on November 13, 2025.



Michael Sukin

# EXHIBIT E

**JAMS ARBITRATION: REF. NO. 5345000713**

<table>
<tr><td>

Amazing Grace Movie, LLC,

               Claimant,

and

Mayoras, Andrew as Representative of the Estate of Franklin, Aretha

               Respondent.

</td><td>

**INTERIM AWARD**

</td></tr>
</table>

███████████████████████████

████████████████████

████████████████████

Claimant Amazing Grace Movie, LLC brought this Application for Emergency Relief against Respondent Andrew Mayoras, in his capacity as Representative of the Estate of Aretha Franklin (the "Estate" or "Respondent"). The Application was made pursuant to JAMS Rule 2 of the JAMS Comprehensive Arbitration Rules and Procedures and California law, on the grounds that Claimant will suffer immediate loss and damage in the absence of emergency relief.

## I.     INTRODUCTION AND PROCEDURAL STATEMENT

1.     The Parties are party to an Agreement, dated March 21, 2019, as amended April 8, 2019, which contains a Dispute Resolution provision at Section 10 of the Agreement, which provides for arbitration before JAMS. The applicable substantive and procedural law is the law of the State of California, including the

1

California Arbitration Act. The JAMS Comprehensive Arbitration Rules and Procedures, and the Expedited Procedures shall apply to this proceeding.

2.     Claimant Amazing Grace Movie, LLC filed a Demand for Arbitration on or about October 22, 2025. The claims are arbitrable. ████████████
███████████████████████████████████████████████████████████
███████████████████████████████████

3.     ███████████████████████████████████████████████
████████████████████████████████████

4.     █████████████████████████████████████████████████
██████████████████████

5.     █████████████████████████████████████████████████
█████████████████████████████████████

6.     ██████████████████████████████████████████████████
███████████████████████████████████████████████████████
██████████████████████████████

7.     Claimant Amazing Grace Movie, LLC appeared through Maurice Pessah, Esq. Respondent Andrew Mayoras as Representative of the Estate of Aretha Franklin appeared through Brian Caplan, Esq. and Jonathan Colman, Esq. ████
███████████████████████████████████████████████████████████
██████████████████████████████████████████████████
█████████████████████████████████████████████████████████

8.     ████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
████████████████████████████████████████████████████

2



9. ████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████

10. ██████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████

11.     Claimant Amazing Grace Movie, LLC brought this Application for Emergency Relief against Respondent Andrew Mayoras, in his capacity as Representative of the Estate of Aretha Franklin (the "Estate" or "Respondent"). The Application was made pursuant to JAMS Rule 2 of the JAMS Comprehensive Arbitration Rules and Procedures and California law, on the grounds that Claimant will suffer immediate loss and damage in the absence of emergency relief.

12.     ████████████████████████████████████████████████

███████████████████████████

        ████████████████████████████████████████████████

        ███████████████████████

        ████████████████████████████████████████████

        █████████████████████████████████████████

3

████████████████████████████████████████████████

████████████    ███████████████████████

███████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████

## II.    FACTS

12.    The following facts are found by this Arbitrator to be true and necessary to this Interim Award. ███████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

█████████████████

13.    ██████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████

14.    ███████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████

4



15. ████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

███████████████

16. ██████████████████████████████████████

████████████████████████████████████████

17. ██████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

███████████████

18. ██████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

19. ██████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

_____

██████████████████████████████████████████
████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████

20. ███████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████

21. ███████████████████████████████████████

██████████████████████████████████

22.   On March 21, 2019, the Estate, on the one hand, and ████████

████████████ and Amazing Grace Movie, LLC (collectively "AE" or

"AGM"), on the other hand, entered into an agreement ██████████████

███████████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████. The March 2019 agreement was minimally amended on April 8, 2019

(together, the "2019 Agreement"),

23. ███████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

███████████████████

24. ███████████████████████████████████████

████████████████████████████████████████████

████████████

6



25.    The 2019 Agreement defines "Concert Footage" as "the audio and visual recordings" of "the Concerts."

26.

27.

7



28. ██████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████

  ▋ ████████████████████████████████████████████████
    █████████████████████████████████████████████

  ▋ ████████████████████████████████████████████████
    █████████████████████████████████

  ▋ ████████████████████████████████████████████

29. ██████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

30. ████████████████████████████████████████████████

████████████████████████████

  ██████████████████████████████████████████████████████

  ██████████████████████████████████████████████████████

  ████████████████████████████████████████████████

  ██████████████████████████████████████████████████████

  ████████████████████████████████████████████████████████

  ██████████████████████████████████████████████████████

  ██████████████████████████████████████████████████████

  ██████████████████████████████████████████████████████

31. ███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████

32. ██████████████ AGM was offered a fee █████████████████ ██████████████████████████ for use of a four minute thirty-nine second audio clip of the "Concert Footage" (the "Producer's Offer"). The production was seeking to license audio ████████████████████████████ ███████████████████████████ for use in ████████████████ █████████████████████████████ (the "Documentary") █████████████████████████████████████████ █████████████

33. The ██████████ Documentary is historical in nature ███████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████ ████████████████████████████████████████████████████.

34. The Documentary is not intended as a political statement.

35. ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████

36. ██████████████████████████████████

37. █████████████████████████████████████████ ███████████████████████████████████████████ █████████████████████████████

38. During ███ five months of negotiations ██████████████, ████ Claimant contacted the Estate to request approval for use in the ████████ Documentary ██████████████████████████████████████████ █████████████████████████████████████.

39. AGM opened discussions with the Estate concerning the licensing of the audio ██████████████████████████████████████ subject to ████████████ approval. The Estate repeatedly requested further information that it wanted before accepting or rejecting the proposal █████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████.

40. The Estate declined to provide consent on grounds of "potential implied religious and/or political connotations." ██████████████████████ ████████████████████████████████████████████████ ██████████

41. ██████████████████████████████████████████████ ██████████████████████████████████████ ████████████████████████████████████████████ ████████████████████

42. ██████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████ ██████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████████████████████████

43.    ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████

### III.   ANALYSIS

44.    █████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

██████████████████

        ██      ████████████████████

45.    ██████████████████████████████████████████████████████

███████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

46.



47.

48.

49.

50.

51.

52.    The Emergency Arbitrator finds and concludes that ▮▮▮▮▮▮▮ the 2019 Agreement is an all-inclusive grant not only of the audio-visual rights in the ▮▮▮▮▮▮ Concert Footage, but also in the separate components of these materials, specifically the audio-only portion of music separate from the video portion of the materials.

12

53.   ██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

54.   The Emergency Arbitrator finds and concludes that the rights requested are ██████████████, subject to ████████ approval, "not to be unreasonably withheld."

55.   ██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

56.   ██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████

13

57.    ███████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████ Respondent argues that ███████████████

███████████████████████ no synchronization license from

the Estate-owned Springtime Music has ever been issued for the ████████

Documentary, ████████████████████ nor, aserts Respondent, will one ever be

issued for the ████████ Documentary.

58.    ████████████████████████████████████

████████████████████████████████████████████████

59.    The Emergency Arbitrator finds and concludes that Claimant has shown

a likelihood of success at establishing that the rights granted under ████████

████████████████████ the 2019 Agreement are sufficiently broad and all-

encompassing to cover the license sought by the Producer's Offer for the ████████

Documentary.

██    ██████████████████████████████

60.    ██████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

61.    ██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████



62. ██████████████████████████████████████████████

███████████████████████████████████████████████████

63. ██████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████

64. ██████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

65. ██████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████

15



66.

67.

68.

69.

70. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

71. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

72. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

73. The Emergency Arbitrator finds and concludes that Respondent's refusal to grant approval is not based upon an objective commercial reason, or even an objective reason ▮▮▮▮▮▮▮▮▮▮. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮.

74. Respondent's actions in negotiating for five months, delaying approval ▮▮▮▮▮▮▮▮, while in fact having no intention to approve anything ▮▮▮▮▮ ▮▮▮▮▮▮ based on a political dislike, is not exercising its discretion in good faith. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮

75. The Emergency Arbitrator finds that the Claimant has met the burden of showing that it is likely to prevail on the claim that Respondent breached the 2019 Agreement and the covenant of good faith and fair dealing.

17



76. ███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

█████████████  █████████████████████  ██████████

████████████████████████████████

███████████████████████████████████

██████████████████████████████████

█████████████████████████████████

███████████████████████████████████

██████

77. ███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

█████████████████████████

78. ███████████████████████████████████

███████████████████████████████████

███████████████████████████████████

████████████████████████████████

███████████████████████████████████

████████████████████

79.    The Emergency Arbitrator finds and concludes that Claimant will suffer immediate loss in the absence of emergency relief. The producers of the ▉▉▉▉▉ Documentary will withdraw the ▉▉▉▉▉ offer, resulting in a loss ▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. In addition, Claimant's reputation in the entertainment industry will be damages ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉.

## IV.    CONCLUSION.

**A.**    Respondent Andrew Mayoras, as Representative of the Estate of Aretha Franklin, is enjoined from withholding consent to the request from Claimant Amazing Grace Movie, LLC of the Producer's Offer and the request to use the audio ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ in the ▉▉▉▉ Documentary.

**B.**    Respondent Andrew Mayoras, as Representative of the Estate of Aretha Franklin, is enjoined from unreasonably interfering with Claimant Amazing Grace Movie, LLC's right to consummate the Producer's Offer.

**C.**    Respondent Andrew Mayoras, as Representative of the Estate of Aretha Franklin, is enjoined from further interference with Claimant Amazing Grace Movie, LLC's contractual rights pending final adjudication of this Arbitration.

▉▉    ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

19

This emergency relief shall remain in effect pending final adjudication of this Arbitration.


Dated: November 18, 2025

*Barbara A. Reeves*
Barbara A. Reeves, Esq.
Emergency Arbitrator

20

# EXHIBIT F

| | |
|---|---|
| **From:** | Maurice Pessah |
| **To:** | Andy Mayoras; Jonathan Colman; Brian D. Caplan; Eli Melamed; Joshua Rubinton |
| **Subject:** | Amazing Grace Movie, LLC v. Estate of Franklin |
| **Date:** | Thursday, November 20, 2025 4:09:55 PM |

Counsel,

In light of the injunction issued as part of the Emergency Arbitrator's Interim Award (the "Award"), please confirm that all necessary licenses, permissions and authorizations will be issued for Claimant to proceed with the Producer's Offer.  Please be advised that any further interference with Claimant's rights, or any violation of the Award, will be aggressively pursued.

Your prompt confirmation, no later than noon (ET) tomorrow, is encouraged.

Maurice D. Pessah
**Attorney at Law**
**PESSAH LAW GROUP, PC**

9100 Wilshire Blvd.

Suite 850E

Beverly Hills, CA 90212

Direct.   (310) 772-2261

Mobile.  (310) 500-8221
maurice@pessahgroup.com

# EXHIBIT G

Case 2:26-cv-04433    Document 1    Filed 04/27/26    Page 126 of 144    Page ID #:126

 Gmail

Joshua Rubinton <jrubinton@pessahgroup.com>

## Re: EXT: Re: Amazing Grace Movie, LLC v. Estate of Franklin

**Jonathan Colman** <JColman@brmmlaw.com>                    Fri, Nov 21, 2025 at 8:49 AM
To: Maurice Pessah <maurice@pessahgroup.com>, Andy Mayoras <awmayoras@brmmlaw.com>, "Brian D. Caplan"
<bcaplan@reitlerlaw.com>, Eli Melamed <emelamed@pessahgroup.com>, Joshua Rubinton <jrubinton@pessahgroup.com>

Maurice,

Andy and Brian are unavailable today.

Jon

## Jonathan M. Colman

Attorney and Counselor
www.brmmlaw.com| jcolman@brmmlaw.com

1301 W. Long Lake Road, Suite 340
Troy, MI 48098
**P:**248.641.7070
**F:**248.641.7073



*Click here for my full bio.*

This email is confidential, intended for only the recipient(s) named above and may contain information that is privileged, attorney work product or is exempt from disclosure under applicable law. If you have received this message in error or are not the named recipient(s), please immediately notify sender at jcolman@brmmlaw.com and delete this email.

**From:** Maurice Pessah <maurice@pessahgroup.com>
**Date:** Friday, November 21, 2025 at 11:46 AM
**To:** Andy Mayoras <awmayoras@brmmlaw.com>, Jonathan Colman <JColman@brmmlaw.com>,
Brian D. Caplan <bcaplan@reitlerlaw.com>, Eli Melamed <emelamed@pessahgroup.com>, Joshua
Rubinton <jrubinton@pessahgroup.com>
**Subject:** EXT: Re: Amazing Grace Movie, LLC v. Estate of Franklin

> CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Counsel-

Following up.

# EXHIBIT H

| | |
|---|---|
| **From:** | Caplan Brian D. |
| **To:** | Maurice Pessah |
| **Cc:** | Jonathan Colman; LiCalsi, Paul |
| **Subject:** | Follow Up |
| **Date:** | Tuesday, November 25, 2025 11:21:07 AM |

Dear Maurice,

As you have already been advised, the Estate of Aretha Franklin will abide by the Interim Award issued by arbitrator Barbara Reeves in the Jams arbitration proceeding(the "Interim Award"), unless and until the award is reversed in subsequent arbitration or legal proceedings. Therefore,  the Estate will not withhold consent to the proposed usage by Amazing Grace Movie, LLC. absent future contrary arbitration or court order.



SMI separately owns and controls the PA copyright interest in the arrangement ████████ ████ at issue and the synchronization licensing rights related thereto. ████████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████

In light of the foregoing, please be advised that I have been informed that SMI will be offering a synchronization license to the producers of the ████████ documentary for a proposed fee of $████████████████████████████████████ ████████████████████████████████████████.

Guide yourself accordingly.

Very truly yours, Brian Caplan

**Brian D. Caplan**
Reitler Kailas & Rosenblatt LLP
885 Third Avenue, 20th Floor
New York, New York 10022
Main: 212-209-3050
Direct: 212-209-3059
Cell: 914-260-8552
Fax: 212-371-5500
Email: bcaplan@reitlerlaw.com

*This e-mail (including any attachments) is intended only for the exclusive use of the individual[s] to whom it is addressed. The information contained herein or attached hereto may be proprietary, confidential, privileged and exempt from disclosure under applicable law. If you are not the intended recipient or agent responsible for delivering the message to the intended recipient, you are hereby on notice that any use, dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify the sender by telephone (212-209-3050) or e-mail and delete all copies of this e-mail and any attachments.  Thank you.*

Electronically FILED by
Superior Court of California,
County of Los Angeles
4/03/2026 1:09 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By D. Williams, Deputy Clerk

MAURICE D. PESSAH (SBN: 275955)
*maurice@pessahgroup.com*
ELI MELAMED, ESQ. (SBN: 301790)
*emelamed@pessahgroup.com*
**PESSAH LAW GROUP, PC**
9100 Wilshire Blvd., Suite 850E
Beverly Hills, CA  90212
Tel: (310) 772-2261

Attorneys for Petitioner
Amazing Grace Movie, LLC

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF LOS ANGELES

| | |
|---|---|
| AMAZING GRACE MOVIE, LLC, a California limited liability company;<br><br>Petitioner,<br><br>v.<br><br>SPRINGTIME PUBLISHING, INC., a Michigan corporation,<br><br>Respondent. | Case No:  26STCP01358<br><br><br>**PETITIONER'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PETITION TO COMPEL ARBITRATION** |

1

Pursuant to California Evidence Code § 452(h), Petitioner Amazing Grace Movie, LLC ("Petitioner") respectfully requests that the Court take judicial notice of the following:

1. **Exhibit A:** The 2026 Annual Report for Springtime Publishing, Inc. ("Springtime"), filed with the Michigan Department of Licensing and Regulatory Affairs on March 18, 2026.

Pursuant to California Evidence Code § 452(h) (cited in pertinent part): "Judicial notice may be taken of the following matters to the extent that they are not embraced within Section 451: (h) Facts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy."

(1) Exhibit A consists of the official annual report filed by Springtime, in the State of Michigan, reflecting Andrew Mayoras as registered agent, and reflecting the Estate of Aretha Franklin as the president, secretary, treasurer, and sole director of Springtime.

California Evidence Code § 453, subsections (a) and (b), state in pertinent part: "The trial court shall take judicial notice of any matter specified in Section 452 if a party request it and:

(a) Gives each adverse party sufficient notice of the request, through the pleadings or otherwise, to enable such adverse party to prepare to meet the request; and

(b) Furnishes the court with sufficient information to enable it to take judicial notice of the matter.

Pursuant to the provisions of the California Evidence Code cited above, Petitioner respectfully requests that the Court take judicial notice of the exhibits provided.

Dated: April 3, 2026                     **PESSAH LAW GROUP, PC**


                                                /s/ Eli Melamed
                                    By: _____
                                        Eli Melamed
                                        Attorney for Petitioner,
                                        Amazing Grace Movie, LLC

3

# EXHIBIT A

28384198

## LARA
LICENSING AND REGULATORY AFFAIRS

**STATE OF MICHIGAN**
**CSCL/CD- 2500 - DOMESTIC PROFIT**
**CORPORATION ANNUAL REPORT**

Corporations Division Administrator

**FILED**

Doc #: 28384198
Filed Date: 3/18/2026

DEPARTMENT OF LICENSING AND REGULATORY AFFAIRS PROFIT CORPORATION ANNUAL REPORT

Required by Section 911, Act 284, Public Act of 1972

### Corporation Information

| | |
|---|---|
| The present name of the corporation is: | SPRINGTIME PUBLISHING, INC. |
| The identification number assigned by the Bureau is: | 800232122 |
| Annual Report Filing Year | 2026 |

☐ On behalf of the corporation, I certify that no changes have occurred in required information since the previously filed report.

The name of the resident agent at the registered office is:
ANDREW W MAYORAS

Address
1301 W LONG LAKE ROAD, SUITE 340, TROY, MI 48098

Mailing Address
1301 W LONG LAKE ROAD, SUITE 340, TROY, MI 48098

### Purpose

Describe the general nature and kind of business in which the corporation engaged in during the year covered by this report:

Manages intellectual property

### Officers and Directors

List names and complete addresses of all officers and directors.

| Title | Full Name | Address |
|---|---|---|
| ■ President | ESTATE OF ARETHA FRANKLIN | C/O 1301 W LONG LAKE ROAD SUITE 340 TROY, MI 48098 |
| ■ Secretary | ESTATE OF ARETHA FRANKLIN | C/O 1301 W LONG LAKE ROAD SUITE 340 TROY, MI 48098 |
| ■ Treasurer | ESTATE OF ARETHA FRANKLIN | C/O 1301 W LONG LAKE ROAD SUITE 340 TROY, MI 48098 |
| ■ Director | ESTATE OF ARETHA FRANKLIN | C/O 1301 W LONG LAKE ROAD SUITE 340 TROY, MI 48098 |

### Attestations

☒ I understand that the information I enter into the online system is public information and will appear online and on copy requests exactly as I enter it into the system.

☒ I have been authorized by the business entity to file this document online.

☒ I, HEREBY SWEAR AND/OR AFFIRM, under penalty of law, including criminal prosecution, that the facts contained in this document are true. I certify that I am signing this document as the person(s) whose signature is required, or as an agent of the person(s) whose signature is required, who has authorized me to place his/her signature on this document.

C0725-9492   03/18/2026 Received by Michigan Corporations Division

Signature

| | | | |
|---|---|---|---|
| *Authorized Agent* | *Estate of Aretha Franklin* | *Andrew W. Mayoras* | *03/18/2026* |
| Signer's Capacity | On behalf of | Sign Here | Date |

C0725-9493    03/18/2026 Received by Michigan Corporations Division

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY | STATE BAR NUMBER: | FOR COURT USE ONLY |
|---|---|---|

NAME: Maurice Pessah (SBN 275955) Eli Melamed (301790)
FIRM NAME: PESSAH LAW GROUP, PC
STREET ADDRESS: 9100 Wilshire Blvd., Suite 850E
CITY: Beverly Hills   STATE: CA   ZIP CODE: 90212
TELEPHONE NO.: 310-772-2261   FAX NO.:
EMAIL ADDRESS: emelamed@pessahgroup.com
ATTORNEY FOR (name): Amazing Grace Movie, LLC

*FOR COURT USE ONLY*

Electronically FILED by
Superior Court of California,
County of Los Angeles
4/03/2026 1:09 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By D. Williams, Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
STREET ADDRESS: 111 North Hill Street
MAILING ADDRESS: same
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Stanley Mosk

CASE NAME: Amazing Grace Movie, LLC v Springtime Publishing, Inc.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: 26STCP01358 |
|---|---|---|
| [X] Unlimited (Amount demanded exceeds $35,000) | [ ] Limited (Amount demanded is $35,000 or less) | [ ] Counter  [ ] Joinder | |
| | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Asbestos**
[ ] Asbestos (04)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/Unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)
**Employment Development Department (EDD)**
[ ] EDD decision review (48)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.404)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Comprehensive groundwater adjudication (47)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint (not specified above) (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[X] Other petition (not specified above) (43)

Judicial Council of California, courts.ca.gov
Rev. January 1, 2026, Mandatory Form
Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740
Cal. Stds. Jud. Admin., std. 3.10
**Civil Case Cover Sheet**
CM-010, Page 1 of 3

CM-010

2.  Is this case complex under rule 3.400 of the California Rules of Court? ☐ Yes ☒ No

If the case is complex, mark the factors requiring exceptional judicial management:

a. ☐ Large number of separately represented parties

b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve

c. ☐ Substantial amount of documentary evidence

d. ☐ Large number of witnesses

e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court

f. ☐ Substantial postjudgment judicial supervision

3.  Remedies sought *(check all that apply):*

a. ☐ monetary

b. ☒ nonmonetary; declaratory or injunctive relief

c. ☐ punitive

4.  Number of causes of action *(specify):*    1 - Petition to Compel Arbitration

5.  Is this case a class action suit? ☐ Yes ☒ No

6.  If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date:  April 3, 2026

Eli Melamed
_____
(TYPE OR PRINT NAME)

▶ /s/ Eli Melamed
_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

---

### NOTICE

- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.

- File this cover sheet in addition to any cover sheet required by local court rule.

- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.

- Unless this is a collections case under rule 3.740 of the California Rules of Court or a complex case, this cover sheet will be used for statistical purposes only.

### INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on pages 1 and 2. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 of the California Rules of Court is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $35,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment.  The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**SEE PAGE 3 FOR INFORMATION PURPOSES ONLY.**



CM-010

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/
Wrongful Death
Uninsured Motorist (46) *(if the case involves
an uninsured motorist claim subject to
arbitration, check this item instead of Auto)*
**Asbestos**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/Wrongful Death
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death) Tort**
Product Liability *(not asbestos or toxic/
environmental)* (24)
Medical Malpractice (45)
Medical Malpractice–Physicians &
Surgeons
Other Professional Health Care
Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD (e.g.,
assault, vandalism)
Intentional Infliction of Emotional Distress
Negligent Infliction of Emotional Distress
Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest)
*(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice *(not
medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease Contract *(not
unlawful detainer or wrongful eviction)*
Contract/Warranty Breach–Seller Plaintiff
*(not fraud or negligence)*
Negligent Breach of Contract/Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book
accounts) (09)
Collections Case–Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally
complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute
**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent
domain, landlord-tenant, or
foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs,
check this item; otherwise, report as
Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition re Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court Case
Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner
Appeals
**Employment Development Department (EDD)**
EDD Decision Review (48) *(if the case
involves an Employment Development
Department decision, check this item
instead of Wrongful Termination or Other
Employment)*

**Provisionally Complex Civil Litigation (Cal.
Rules of Court, rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Comprehensive Groundwater Adjudication
(47)
Insurance Coverage Claims *(arising from
provisionally complex case type listed
above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic
relations)*
Sister-State Judgment
Administrative Agency Award *(not unpaid
taxes)*
Petition/Certification of Entry of Judgment
on Unpaid Taxes
Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only Injunctive Relief
Only *(non-harassment)*
Mechanic's Lien
Other Commercial Complaint Case *(non-
tort/non-complex)*
Other Civil Complaint *(non-tort/non-
complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late Claim
Other Civil Petition

**Civil Case Cover Sheet**

| Print | Save | Clear |

| SHORT TITLE | CASE NUMBER |
|---|---|
| Amazing Grace Movie, LLC v Springtime Publishing, Inc. | 26STCP01358 |

# CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION

## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Courthouse Location (Column C) | |
|---|---|
| 1.    Class Actions must be filed in the Stanley Mosk Courthouse, Central District. | 7.    Location where petitioner resides. |
| 2.    Permissive filing in Central District. | 8.    Location wherein defendant/respondent functions wholly. |
| 3.    Location where cause of action arose. | 9.    Location where one or more of the parties reside. |
| 4.    Location where bodily injury, death or damage occurred. | 10.    Location of Labor Commissioner Office. |
| 5.    Location where performance required, or defendant resides. | 11.    Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection). |
| 6.    Location of property or permanently garaged vehicle. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ 2201 Motor Vehicle – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | Uninsured Motorist (46) | ☐ 4601 Uninsured Motorist – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| **Other Personal Injury/ Property Damage/ Wrongful Death** | Other Personal Injury/ Property Damage/ Wrongful Death (23) | ☐ 2301 Premise Liability (e.g., dangerous conditions of property, slip/trip and fall, dog attack, etc.) | 1, 4 |
| | | ☐ 2302 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, battery, vandalism, etc.) | 1, 4 |
| | | ☐ 2303 Intentional Infliction of Emotional Distress | 1, 4 |
| | | ☐ 2304 Other Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | | ☐ 2305 Elder/Dependent Adult Abuse/Claims Against Skilled Nursing Facility | 1, 4 |
| | | ☐ 2306 Intentional Conduct – Sexual Abuse Case (in any form) | 1, 4 |

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

LASC Local Rule 2.3

| SHORT TITLE<br>Amazing Grace Movie, LLC v Springtime Publishing, Inc. | CASE NUMBER |
| --- | --- |

| | A<br>Civil Case Cover<br>Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable<br>Reasons (see<br>Step 3 above) |
| --- | --- | --- | --- |
| **Other Personal Injury/ Property Damage/ Wrongful Death** | | ☐ 2307 Construction Accidents | 1, 4 |
| | | ☐ 2308 Landlord – Tenant Habitability (e.g., bed bugs, mold, etc.) | 1, 4 |
| | Product Liability (24) | ☐ 2401 Product Liability (not asbestos or toxic/ environmental) | 1, 4 |
| | | ☐ 2402 Product Liability – Song-Beverly Consumer Warranty Act (CA Civil Code §§1790-1795.8) (Lemon Law) | 1, 3, 5 |
| | Medical Malpractice (45) | ☐ 4501 Medical Malpractice – Physicians & Surgeons | 1, 4 |
| | | ☐ 4502 Other Professional Health Care Malpractice | 1, 4 |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ 0701 Other Commercial/Business Tort (not fraud or breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ 0801 Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ 1301 Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ 1601 Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ 2501 Legal Malpractice | 1, 2, 3 |
| | | ☐ 2502 Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ 3501 Other Non-Personal Injury/Property Damage Tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ 3601 Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ 1501 Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ 1502 Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract / Warranty (06) (not insurance) | ☐ 0601 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ 0602 Contract/Warranty Breach – Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ 0603 Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ 0604 Other Breach of Contract/Warranty (no fraud/ negligence) | 1, 2, 5 |
| | | ☐ 0605 Breach of Rental/Lease Contract (COVID-19 Rental Debt) | 2, 5 |
| | Collections (09) | ☐ 0901 Collections Case – Seller Plaintiff | 5, 6, 11 |
| | | ☐ 0902 Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ 0903 Collections Case – Purchased Debt (charged off consumer debt purchased on or after January 1, 2014) | 5, 6, 11 |
| | | ☐ 0904 Collections Case – COVID-19 Rental Debt | 5, 11 |
| | Insurance Coverage (18) | ☐ 1801 Insurance Coverage (not complex) | 1, 2, 5, 8 |

| SHORT TITLE | CASE NUMBER |
|---|---|
| Amazing Grace Movie, LLC v Springtime Publishing, Inc. | |

| | **A**<br>Civil Case Cover Sheet Case Type | **B**<br>Type of Action<br>(check only one) | **C**<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Contract** (Continued) | Other Contract (37) | ☐ 3701 Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ 3702 Tortious Interference | 1, 2, 3, 5 |
| | | ☐ 3703 Other Contract Dispute (not breach/insurance/fraud/ negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/ Inverse Condemnation (14) | ☐ 1401 Eminent Domain/Condemnation<br><br>Number of Parcels _____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ 3301 Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ 2601 Mortgage Foreclosure | 2, 6 |
| | | ☐ 2602 Quiet Title | 2, 6 |
| | | ☐ 2603 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer – Commercial (31) | ☐ 3101 Unlawful Detainer – Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Residential (32) | ☐ 3201 Unlawful Detainer – Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Post Foreclosure (34) | ☐ 3401 Unlawful Detainer – Post Foreclosure | 2, 6, 11 |
| | Unlawful Detainer – Drugs (38) | ☐ 3801 Unlawful Detainer – Drugs | 2, 6, 11 |
| **Judicial Review** | Asset Forfeiture (05) | ☐ 0501 Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ 1101 Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ 0201 Writ – Administrative Mandamus | 2, 8 |
| | | ☐ 0202 Writ – Mandamus on Limited Court Case Matter | 2 |
| | | ☐ 0203 Writ – Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ 3901 Other Writ/Judicial Review | 2, 8 |
| | | ☐ 3902 Administrative Hearing | 2, 8 |
| | | ☐ 3903 Parking Appeal | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ 0301 Antitrust/Trade Regulation | 1, 2, 8 |
| | Asbestos (04) | ☐ 0401 Asbestos Property Damage | 1, 11 |
| | | ☐ 0402 Asbestos Personal Injury/Wrongful Death | 1, 11 |

| LASC CIV 109 Rev. 01/23 | **CIVIL CASE COVER SHEET ADDENDUM** | LASC Local Rule 2.3 |
|---|---|---|
| For Mandatory Use | **AND STATEMENT OF LOCATION** | |

| SHORT TITLE | CASE NUMBER |
|---|---|
| Amazing Grace Movie, LLC v Springtime Publishing, Inc. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Provisionally Complex Litigation** (Continued) | Construction Defect (10) | ☐ 1001 Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ 4001 Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☐ 2801 Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ 3001 Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ 4101 Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ 2001 Sister State Judgment | 2, 5, 11 |
| | | ☐ 2002 Abstract of Judgment | 2, 6 |
| | | ☐ 2004 Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ 2005 Petition/Certificate for Entry of Judgment Unpaid Tax | 2, 8 |
| | | ☐ 2006 Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ 2701 Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (not specified above) (42) | ☐ 4201 Declaratory Relief Only | 1, 2, 8 |
| | | ☐ 4202 Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ 4203 Other Commercial Complaint Case (non-tort/noncomplex) | 1, 2, 8 |
| | | ☐ 4204 Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ 2101 Partnership and Corporation Governance Case | 2, 8 |
| | Other Petitions (not specified above) (43) | ☐ 4301 Civil Harassment with Damages | 2, 3, 9 |
| | | ☐ 4302 Workplace Harassment with Damages | 2, 3, 9 |
| | | ☐ 4303 Elder/Dependent Adult Abuse Case with Damages | 2, 3, 9 |
| | | ☐ 4304 Election Contest | 2 |
| | | ☐ 4305 Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ 4306 Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☑ 4307 Other Civil Petition | (2, 9) |

LASC CIV 109 Rev. 01/23

For Mandatory Use

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

LASC Local Rule 2.3

| SHORT TITLE<br>Amazing Grace Movie, LLC v Springtime Publishing, Inc. | CASE NUMBER |
|---|---|

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address, which is the basis for the filing location including zip code. (No address required for class action cases.)

| REASON:<br>☐ 1. ☑ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☐ 8. ☑ 9. ☐ 10. ☐ 11 | ADDRESS:<br>1633 N STANLEY AVE |
|---|---|
| CITY:<br>Los Angeles | STATE:<br>CA | ZIP CODE:<br>90046 | |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the __Central_____ District of the Superior Court of California, County of Los Angeles [Code of Civ. Proc., 392 et seq., and LASC Local Rule 2.3(a)(1)(E)]

Dated: __04/03/2026_____

/s/ Eli Melamed

_____
(SIGNATURE OF ATTORNEY/FILING PARTY

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1.  Original Complaint or Petition.
2.  If filing a Complaint, a completed Summons form for issuance by the Clerk.
3.  Civil Case Cover Sheet Judicial Council form CM-010.
4.  Civil Case Cover Sheet Addendum and Statement of Location form LASC CIV 109 (01/23).
5.  Payment in full of the filing fee, unless there is a court order for waiver, partial or schedule payments.
6.  A signed order appointing a Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court to issue a Summons.
7.  Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the Summons and Complaint, or other initiating pleading in the case.

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

Stanley Mosk Courthouse

111 North Hill Street, Los Angeles, CA 90012

PLAINTIFF(S):

Amazing Grace Movie, LLC

DEFENDANT(S):

Springtime Publishing, Inc.

**NOTICE OF HEARING ON PETITION**

Reserved for Clerk's File Stamp

**FILED**
Superior Court of California
County of Los Angeles
04/08/2026
David W. Slayton, Executive Officer / Clerk of Court
By: _____ A. Solis _____ Deputy

CASE NUMBER:

26STCP01358

TO THE PETITIONER(S) / ATTORNEY FOR PETITIONER(S) OF RECORD:

You are hereby notified that the hearing in the above entitled action has been set for 05/08/2026 at 8:30 AM in Department 40 located at the Stanley Mosk Courthouse                    , 111 North Hill Street, Los Angeles, CA 90012                                                 .

Petitioner in propria persona or counsel for the petitioner is ordered to give notice of this hearing by serving a copy of this notice on all parties to this action, and file proof of service thereof. Failure to timely give notice and file proof of service may lead to imposition of sanctions pursuant to Code Civil Procedure section 177.5 or otherwise.

Dated: 04/08/2026                    By: _____ Michael Shultz / Judge _____

Judicial Officer

**NOTICE OF HEARING ON PETITION**

LACIV [#] (Rev. [mm/yy])
LASC Approved [mm-yy]